# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS

### BEAUMONT DIVISION

| | | |
|---|---|---|
| STERETT EQUIPMENT COMPANY, LLC, | * | |
| | * | |
| *Plaintiff,* | * | |
| | * | |
| v. | * | Civil Action No._____ |
| | * | |
| PH STEEL, INC.; | * | |
| THE PROLER GROUP, LLC; | * | |
| PHD HOLDINGS, LLC; | * | |
| J-3 METALS RECYCLING CENTER LLC; | * | |
| PWH HOLDINGS, LLC; | * | |
| and CHRIS PROLER | * | |
| | * | |
| *Defendants.* | * | |

### **VERIFIED COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Sterett Equipment Company, LLC, the Plaintiff herein, by and through undersigned counsel, and hereby files this Verified Complaint against defendants, PH Steel, Inc. (hereinafter, "PH Steel"), The Proler Group, LLC (hereinafter, "Proler Group"), PHD Holdings, LLC (hereinafter, "PHD"), J-3 Metals Recycling Center LLC (hereinafter, "J-3 Metals"), PWH Holdings, LLC (hereinafter, "PWH"), and Chris Proler (hereinafter, "Proler") (collectively, the "Defendants"), and states as follows:

### I.

### **NATURE OF THE CASE**

1.  Sterett Equipment Company, LLC seeks to obtain monetary damages from

Defendants as a result of their willful breach of contract, commission of torts by Defendants against Sterett,  and fraudulent inducement of Plaintiff by Defendants.

2.     All Defendants, through the active direction of Chris Proler, fraudulently conspired to induce Sterett Equipment Company, LLC to enter into a bare rental lease agreement with PH Steel, Inc.  Pursuant to the bare rental lease agreement between Sterett Equipment Company, LLC and PH Steel, Inc., Plaintiff delivered a modular barge and a 330-ton crawler crane to the PH Steel Port Project.  PH Steel, Inc. materially and willfully breached the lease agreement with Plaintiff by failing to make payments as agreed upon pursuant to that contract. Furthermore, Defendants damaged the equipment rented to PH Steel, Inc. by Plaintiff and have not remitted payment for the requisite repairs and/or replacement of the equipment, and fraudulently induced Plaintiff to continue to allow PH Steel, Inc. to maintain possession of the equipment by promising to pay the outstanding balance, while knowing that they would not remit payment.  Moreover, Defendants have committed various torts against Plaintiff. Additionally, Plaintiff has suffered consequential damages resulting from Defendants' tortious actions and breach of contract.

3.     Chris Proler, who directs and controls PH Steel Inc, The Proler Group, LLC, PHD Holdings, LLC, J-3 Metals Recycling Center, LLC, and PWH Holdings, LLC's (collectively, the "Corporate Defendants") activities, abused the respective corporate forms of the Corporate Defendants.  Furthermore, all named Defendants are alter egos of one another.  Consequently, their corporate forms should be disregarded, and all Defendants should be held jointly and severally liable.

## II.

## PARTIES

4.      Plaintiff Sterett Equipment Company, LLC is an Indiana limited liability company with a principal office address of 9007 S State Road 57N, Elberfeld, Indiana 47613.

5.      Defendant PH Steel, Inc. is a Texas for-profit corporation with a principal office address of 1175 Adkins Road, Houston, Texas 77055.  It is owned, directed, and controlled by Chris Proler.  It is the alter ego of The Proler Group, LLC, PHD Holdings, LLC, PWH Holdings, LLC, J-3 Metals Recycling Center LLC, and Chris Proler.  Its registered agent for service is Jeffry B. Lewis whose address is 1175 Adkins Road, Houston, Texas 77055.

6.      Defendant The Proler Group, LLC is a Texas limited liability company with a principal office of 1175 Adkins Road, Houston, Texas 77055.  It is owned, directed, and controlled by Chris Proler.  It also operates under the assumed name of J-3 Metals Recycling Center, LLC.[1]  PHD Holdings, LLC, another Defendant herein, amended its name to The Proler Group, LLC on July 6, 2022.[2]  It is the alter ego of PH Steel, Inc, PWH Holdings, LLC, J-3 Metals Recycling Center LLC, PHD Holdings, LLC, and Chris Proler.  It filed its Certificate of Termination of Domestic Entity with the Texas Secretary of State's Office on July 6, 2022.[3]  Its registered agent for service is Jeffry B. Lewis whose address is 1175 Adkins Road, Houston, Texas 77055.

7.      Defendant PHD Holdings, LLC is a Texas Limited Liability Company with a

---

[1] A true and accurate copy of The Proler Group, LLC's listing of J-3 Metals Recycling Center LLC is attached hereto as Exhibit 1.
[2] A true and accurate copy of The Proler Group, LLC's Certificate of Amendment changing its name to PHD Holdings, LLC is attached hereto as Exhibit 2.
[3] A true and accurate copy of The Proler Group, LLC's Certificate of Termination of Domestic Entity with the Texas Secretary of State's Office and Written Consent of the Sole Member of The Proler Group, LLC is attached hereto as Exhibit 3.

principal office address located at 1175 Adkins Road, Houston, Texas 77055. It amended its name to The Proler Group, LLC on July 6, 2022.[4]  Its registered agent for service is Jeffry B. Lewis whose address is 1175 Adkins Road, Houston, Texas 77055. It is the alter ego of PH Steel, Inc., The Proler Group, LLC, PWH Holdings, LLC, J-3 Metals Recycling Center LLC, and Chris Proler

8.    J-3 Metals Recycling Center, LLC is a Texas limited liability company that is wholly owned by PHD Holdings, LLC.[5]  Its principal office address is 1175 Adkins Road, Houston, Texas 77055.  It is the alter ego of PH Steel, Inc., The Proler Group, LLC, PWH Holdings, PHD Holdings, LLC, and Chris Proler. Its registered agent for service James T. Clancy, whose address is 802 N. Carancahua, Suite 1900, Corpus Christi, Texas 78401.

9.    Defendant PWH Holdings, LLC is a Texas Limited Liability Company with a principal office of 1175 Adkins Road, Houston, Texas 77055.  It is wholly owned and managed by Chris Proler.[6]  It is the alter ego of PH Steel, Inc., The Proler Group, LLC, PHD Holdings, LLC, J-3 Metals Recycling Center, LLC, and Chris Proler.  Its registered agent for service is Chris Proler, whose address is 1175 Adkins Road, Houston, Texas 77055.

10.    Defendant Chris Proler is a resident of the state of Texas and is the Chief Executive Officer, President, and Director of The Proler Group, LLC, PWH Holdings, LLC, PHD Holdings, LLC and PH Steel, Inc. He is the alter ego of The Proler Group, LLC, PWH Holdings, LLC, PHD Holdings, LLC, J-3 Metals Recycling Center, LLC, and PH Steel, Inc. Service can be achieved on Chris Proler at 3333 Lake Street #6, Houston, Texas 77098.

---

[4] See Exhibit 2.
[5] A true and accurate copy of PHD Holdings, LLC's Texas Franchise Public Information Report from 2020 is attached hereto as Exhibit 4.
[6] A true and accurate copy of PWH Holdings, LLC's Texas Franchise Public Information Report from 2021 is attached hereto as Exhibit 5.

## III.

## JURISDICTION AND VENUE

11.     This Court maintains subject matter jurisdiction pursuant to 28 U.S. C. § l 332(a), based upon diversity of citizenship, in that Plaintiff is deemed a citizen of the State of Indiana; Defendant PH Steel, Inc. is deemed a citizen of the State of Texas; Defendant The Proler Group, LLC is deemed to be a citizen of the State of Texas; Defendant PHD Holdings, LLC is deemed to be a citizen of the State of Texas; Defendant J-3 Metals Recycling Center LLC is deemed to be a citizen of the State of Texas; Defendant PWH Holdings, LLC is deemed to be a citizen of the State of Texas, Defendant Chris Proler is deemed a citizen of the State of Texas, and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

12.     Venue is proper in this Court pursuant to 28 U.S. C. § 1391 (b)(2) or (b)(3).

13.     This Court maintains general personal jurisdiction over Defendants, as all Defendants are residents of the state of Texas and all Defendants have purposefully engaged in business in this state; performed the contract at issue in this state; and/or have committed torts against Plaintiff in this state.

## IV.

## GENERAL FACTUAL ALLEGATIONS

14.     Sterett Equipment Company, LLC (hereinafter, "Sterett" and/or "Plaintiff") is in the business of leasing equipment to various companies.

15.     On or about August 5, 2021, PH Steel, Inc. (hereinafter, "PH Steel"), at the direction of Chris Proler (hereinafter, "Proler") purposefully requested and solicited a quote from Sterett for a bare rental lease of a modular barge and a 330-ton crawler crane (collectively, the

"Equipment") to be used in the PH Steel Port Project (the "Project"), located at 8010 S. Avenue, Sabine Pass, Texas 77655 (the "Job Site").

16.    In response to Defendants' purposeful solicitation, Sterett provided PH Steel with Quote Number 75248 (hereinafter, the "Quote")[7] and the lease agreement (hereinafter, the "Contract") on August 5, 2021[8].

17.    The Equipment and services listed under the Quote, which was adopted by the Contract, included the following:

| Product | Sales Price | Line Item Description |
|---|---|---|
| 330 Ton Crawler Monthly | $32,000.00 | (Includes Service Rate) – (Overtime Rate - $160….. allowed 200 hrs per Month) |
| Freight In | $1,100.00 | 1 Load – Additional Boom Section Needed |
| Freight Out | $1,100.00 | 1 Load – Additional Boom Section Needed |
| A&D Director Daily | $1,800.00 | A&D Tech for Crane – Includes Travel |
| Item | $30,000.00 | (Per Month) – Includes 80' x 80' x 7' Modular Barge Sections, Spud 24' R 70', Spud Winch Assembly w. PPU, Spudwell 24' R |
| A&D Director Daily | $1,800.00 | Barge Tech for Disassembly – Includes Travel |
| Item | $1,500.00 | Per Marine Barge Inspection – (As needed/ required) |

---

[7] A true and accurate copy of the Quote is attached hereto as Exhibit 6.
[8] A true and accurate copy of the Contract is attached hereto as Exhibit 7.

*See Ex. 6.*

18.     The Contract was signed by Proler on August 6, 2021. *See Ex. 7,* p. 1.

19.     Furthermore, the Parties agreed to the following Contract provision:

> WE ACCEPT YOUR TERMS OF SALE, AS LISTED ABOVE IN PAYMENT TERMS, FROM INVOICE DATE PAYMENT NOT RECEIVED BY THE DUE DATE WILL RESULT IN AN ADDITIONAL CHARGE OF 1.5% PER MONTH ($10 MINIMUM CHARGE) AND IN ADDITION WE ARE RESPONSIBLE FOR COSTS OF COLLECTION INCLUDING ATTORNEY'S FEES INCURRED IN THE COLLECTION PROCESS

*See. Ex. 7,* p. 1.

20.     The Equipment was delivered to the Job Site on or about August 18, 2021, and accepted by representatives of Defendants, beginning the term of the lease under the Contract.

21.     On or about  August 18, 2021, Sterett began sending PH Steel monthly invoices.[9]

22.     For several months, Defendants made payments on invoices sent by Sterett, including payments received by Sterett via ACH Deposit from "PH STEEL INC."[10]

23.     Sterett also received multiple payments on the Contract from "PWH HOLDINGS LLC" via federal wire into its business bank account.

24.     The receipt of payments from both PWH and PH Steel is direct evidence that the two entities are alter egos of one another.

25.     On April 27, 2022, Sterett sent PH Steel Invoice #23144 (the "April Invoice") in the amount of Sixty-Seven Thousand Five Hundred Ninety-Five Dollars ($67,595.00).[11]

---

[9] A true and accurate copy of Invoice 22776, dated August 18, 2021, is attached hereto as Exhibit 8.

[10] A true and accurate copy of Sterett's Remittances Statement is attached hereto as Exhibit 9.  It has been redacted to remove account numbers and payment information from companies not associated with this action.

[11] A true and accurate copy of the April Invoice is attached hereto as Exhibit 10.

26.     PH Steel to-date has not remitted payment on the April Invoice, which has also been accruing interest at the rate of one and one-half percent (1.5%) per month pursuant to the terms of the Contract.

27.     On or about May 25, 2022, Sterett sent PH Steel Invoice #23178 (the "May Invoice")  in the amount of Sixty-Seven Thousand Five Hundred Ninety-Five Dollars ($67,595.00).[12]

28.     PH Steel to-date has not remitted payment on the May Invoice, which has also been accruing interest at the rate of one and one-half percent (1.5%) per month pursuant to the terms of the Contract.

29.     On or about June 22, 2022, Sterett sent PH Steel Invoice #23215 (the "June Invoice")  in the amount of Sixty-Seven Thousand Five Hundred Ninety-Five Dollars ($67,595.00).[13]

30.     PH Steel to-date has not remitted payment on the June Invoice, which has also been accruing interest at the rate of one and one-half percent (1.5%) per month pursuant to the terms of the Contract.

31.     On or about July 20, 2022, Sterett sent PH Steel Invoice #23256 (the "July Invoice")  in the amount of Sixty-Seven Thousand Five Hundred Ninety-Five Dollars ($67,595.00).[14]

32.     PH Steel to-date has not remitted payment on the July Invoice, which has also been accruing interest at the rate of one and one-half percent (1.5%) per month pursuant to the terms of the Contract.

---

[12] A true and accurate copy of the May Invoice is attached hereto as Exhibit 11.
[13] A true and accurate copy of the June Invoice is attached hereto as Exhibit 12.
[14] A true and accurate copy of the July Invoice is attached hereto as Exhibit 13.

33.    On or about August 17, 2022, Sterett sent PH Steel Invoice #23293 (the "August Invoice")  in the amount of Sixty-Seven Thousand Five Hundred Ninety-Five Dollars ($67,595.00).[15]

34.    PH Steel to-date has not remitted payment on the August Invoice, which has also been accruing interest at the rate of one and one-half percent (1.5%) per month pursuant to the terms of the Contract.

35.    On or about September 14, 2022, Sterett sent PH Steel Invoice #23334 (the "September Invoice")  in the amount of Sixty-Seven Thousand Five Hundred Ninety-Five Dollars ($67,595.00).[16]

36.    PH Steel to-date has not remitted payment on the September Invoice, which has also been accruing interest at the rate of one and one-half percent (1.5%) per month pursuant to the terms of the Contract.

37.    For several weeks, Sterett engaged PH Steel in negotiations regarding payment of its outstanding balance.

38.    During this period, PH Steel repeatedly promised payment shortly if Sterett would agree to allow it to continue its lease of the Equipment under the terms of the Contract.[17]

39.    On or about September 28, 2022, Sterett gave notice to PH Steel that it was declaring PH Steel in default of the Contract, and Sterett exercised its contractual right to repossess the Equipment.

40.    Furthermore, as evidenced in Exhibit 16 attached hereto, PH Steel through its

---

[15] A true and accurate copy of the August Invoice is attached hereto as Exhibit 14.
[16] A true and accurate copy of the September Invoice is attached hereto as Exhibit 15.
[17] A true and accurate copy of an email exchange between Nolan Thomas, Sterett's Chief Financial Officer, and Jason Goldberg, President of The Proler Group, LLC and PH Steel, Inc. regarding PH Steel making a promise to pay Sterett is attached hereto as Exhibit 16.

President, Jason Goldberg (hereinafter, "Goldberg"), admitted that PH Steel owed Sterett the amount of money that is claimed in this action on September 29, 2022.

41.     On or about September 30, 2022, Sterett hired a third-party tugboat to retrieve possession of the crane, for which it incurred significant expenses.

42.     Furthermore, Sterett has been forced to pay storage fees while the Equipment was Disassembled following repossession.

43.     Additionally, prior to Sterett's repossession of the Equipment, the Equipment was damaged while in Defendants' possession, requiring Sterett to incur costs and expenses to repair the Equipment.

**V.**

**FURTHER FACTUAL ALLEGATIONS TO SUPPORT
JOINT AND SEVERAL LIABILITY AGAINST DEFENDANTS**

44.     Communications between Sterett and PH Steel's President, Goldberg, have largely been through email.  Mr. Goldberg's email is jg@prolergroup.com, and is under the heading of "Proler Group."[18]

45.     General counsel for PH Steel, is Jeffry B. Lewis, whose email stamps include PH Steel and J-3 Metals.  His email address is jl@prolergroup.com.

46.     PH Steel, The Proler Group, PHD, PWH, and J-3 Metals all have the same principal office address: 1175 Adkins Road, Houston, Texas 77055.

47.     Chris Proler owns and controls PH Steel, PHD, PWH, J-3 Metals, and the Proler Group.

48.     J-3 Metals and PH Steel are one hundred percent (100%) owned by PHD.[19]

---

[18] See Exhibit 16.
[19] A true and accurate copy of PHD's Texas Franchise Tax Public Information Report from 2020 is attached hereto as Exhibit 17.

49.    On July 6, 2022, PHD amended its name to "The Proler Group, LLC."

50.    Also on July 6, 2022, the Proler Group filed for dissolution – Proler signed the Articles of Dissolution as the Proler Group's sole member.[20]

51.    PWH made multiple payments to Plaintiff on the Contract with PH Steel.

52.    PH Steel identifies itself on its website as  "a Proler Group Company."[21]

53.    The Contract was signed by Chris Proler, who owns, controls, and dominates the operations of all of the Corporate Defendants.

54.    The allegations set forth above and the exhibits attached hereto evidence that the Corporate Defendants commingle their funds, pay for each other's liabilities, share common owners, and share common managers, therefore making them alter egos of one another.  Proler, who owns and controls the Corporate Defendants, is an alter ego of these corporations.  As a result, all of the Defendants remain jointly and severally liable for the damages claimed by Sterett.

55.    Defendants conspired to perpetrate a fraud upon Sterett by inducing Sterett to lease the Equipment to PH Steel pursuant to the terms of the Contract that they solicited without intending to pay Plaintiff.  As a result, all of the Defendants remain jointly and severally liable for Sterett's damages.

**VI.**

**COUNT I – BREACH OF CONTRACT**

56.    Plaintiff hereby alleges and incorporates the preceding paragraphs of this Verified Complaint as if fully set forth herein.

---

[20] See Exhibit 3.
[21] A true and accurate copy of a screenshot showing that PH Steel identifies itself on its website as  "a Proler Group Company" is attached hereto as Exhibit 18.

57.    Plaintiff intended to make a valid offer to Defendants by delivering the Quote along with the Contract in response to Defendants' solicitation of the same for PH Steel's lease of the Equipment.

58.    The terms and conditions of the Contract were clear and definite and communicated to Defendants.

59.    Defendants accepted Plaintiff's offer to lease the equipment pursuant to the terms of the Contract provided by Plaintiff in the Quote and the Contract.

60.    Defendants' and Plaintiff's mutual assent of their intent to contract pursuant to the terms and conditions established in Plaintiff's Quote and the Contract, which were solicited by Defendants, was memorialized through Proler's signature and other communications.

61.    Defendants' and Plaintiff's intent to contract is further established by Defendants' possession of the Equipment and multiple payments made by Defendants to Plaintiff at the rate as agreed upon in the Contract.

62.    The Contract constitutes an enforceable agreement that was binding upon the Parties therein.

63.    Plaintiff fully performed and/or substantially performed its obligations pursuant to the Contract.

64.    Plaintiff performed all conditions precedent to establish a valid lease contract with Defendants.

65.    Proper consideration necessary for the formulation of a valid contract existed between Plaintiff and Defendants.

66.    Under the Parties' Contract, Defendants were permitted to temporarily use the Equipment in exchange for paying a monthly lease rate

67.    Defendants materially breached the Contract by failing to make all payments to Plaintiff as required under the terms of the Contract for the lease of the Equipment.

68.    Furthermore, pursuant to the terms of the Contract, all risks of loss or damage to the Equipment, accidental or otherwise, shall be borne by the Defendants.

69.    While in Defendants' possession, Defendants damaged the Equipment.

70.    Defendants are liable to Plaintiff for the cost to repair the Equipment as a result of their breach.

71.    While repairs are undertaken to the Equipment, the rental period is to continue pursuant to the terms of the Contract.

72.    Ultimately, Plaintiff was forced to repossess the Equipment and incurred costs including for a tugboat needed to reacquire possession of the Equipment, as well as the significant costs to store the Equipment while it was disassembled.

73.    As a result of Defendants' breach of the Contract, Plaintiff has been, and continues to be, damaged.

74.    Pursuant to the Contract, Plaintiff is entitled to actual and consequential damages, including, but not limited to, the value of the Contract, the costs to repair the Equipment, interest on the unpaid amount, the costs of this action, and attorney's fees.

## **COUNTS II – FRAUD AND FRAUDULENT INDUCEMENT**

75.    Plaintiff hereby alleges and incorporates the preceding paragraphs of this Verified Complaint as if fully set forth herein.

76.    Defendants made materially false representations to induce Plaintiff to lease the Equipment.

77.    Defendants made materially false representations, including promising to pay

Plaintiff, in order to induce Plaintiff not to exercise its right under the Contract to repossess the Equipment and to continue to allow Defendants to possess the Equipment, despite Defendants' failure to pay Plaintiff.

78.     When the Defendants made the representations to Plaintiff, Defendants knew the representations were false and/or made the representations recklessly, as a positive assertion of fact, and without knowledge of its truth.

79.     Defendants made the representations to Plaintiff with the intent that Plaintiff act on them.

80.     Plaintiff reasonably and rightfully relied upon Defendants' representations.

81.     Defendants' representations caused injury to Plaintiff.

## COUNT III – UNJUST ENRICHMENT

82.     Plaintiff hereby alleges and incorporates the preceding paragraphs of this Verified Complaint as if fully set forth herein.

83.      Plaintiff rendered a measurable benefit to the Defendants at the Defendants' express or implied request.

84.     Plaintiff expected payment from Defendants.

85.     Allowing Defendants to retain the benefit without restitution would be unjust.

86.     Defendants accepted the benefits of Plaintiff providing the Equipment.

87.     Defendants had the opportunity to decline those benefits but failed to do so.

88.     Equitable principles prohibit Defendants' unjust enrichment at Plaintiff's expense.

89.     As a result of Defendants' unjust enrichment at Plaintiff's expense, Defendants are required to make restitution to Plaintiff.

## COUNT IV – QUANTUM MERUIT

90.    Plaintiff hereby alleges and incorporates the preceding paragraphs of this Verified Complaint as if fully set forth herein.

91.    Plaintiff provided the Equipment to Defendants for lease.

92.    Defendants accepted the Equipment.

93.    Defendants had reasonable notice that Plaintiff expected compensation for the Equipment.

94.    Defendants have failed to compensate Plaintiff for the Equipment provided.

## COUNT V – PROMISSORY ESTOPPEL

95.    Plaintiff hereby alleges and incorporates the preceding paragraphs of this Verified Complaint as if fully set forth herein.

96.    Defendants made a promise to Plaintiff to compensate Plaintiff for Defendants' lease of Plaintiff's Equipment.

97.    It is foreseeable for Plaintiff to have reasonably and substantially relied upon the Defendants' promise to its detriment.

98.    Plaintiff suffered damages as a result of relying on Defendants' promise to its detriment.

99.    Injustice can be avoided only by enforcing the Defendants' promise.

## COUNT VI – TRESPASS TO CHATTELS

100.    Plaintiff hereby alleges and incorporates the preceding paragraphs of this Verified Complaint as if fully set forth herein.

101.    Defendants dispossessed Plaintiff of the Equipment; Defendants impaired the

Equipment's condition, quality, and/or value; Defendants deprived Plaintiff of the use of the Equipment for a substantial time; and/or Defendants harmed some other thing in which Plaintiff had a legally protected interest.

102.    Plaintiff was damaged as a result of Defendants' actions.

103.    Included within Plaintiff's damages are its loss of use of the Equipment and the costs to repair and/or replace the Equipment.

## COUNT VII – NEGLIGENCE AND GROSS NEGLIGENCE

104.    Plaintiff hereby alleges and incorporates the preceding paragraphs of this Verified Complaint as if fully set forth herein.

105.    Defendants owed Plaintiff a duty of reasonable care to not damage or interfere with Plaintiff's property, the Equipment.

106.    Defendants breached their duty to Plaintiff by damaging the Equipment.

107.    As a direct and proximate result of Defendants' breach, Plaintiff was damaged.

108.    Defendants' negligence was a conscious, voluntary act or omission in reckless disregard of the consequences to Plaintiff.

109.    Included within Plaintiff's damages are actual damages, consequential damages, loss of use of the Equipment and the costs to repair and/or replace the Equipment.

110.    Defendants acted with malice, fraud, gross negligence, or oppressiveness, which was not the result of a mistake of fact or law, mere negligence, or other human failing and entitles Plaintiff to punitive damages.

## COUNT VIII – CONVERSION

111.    Plaintiff hereby alleges and incorporates the preceding paragraphs of this Verified Complaint as if fully set forth herein.

112.    Defendants continued to knowingly and/or intentionally exert unauthorized control over the Equipment belonging to Plaintiff by promising to pay Plaintiff their outstanding balance in exchange for allowing Defendants to continue their possession of the Equipment in violation of Indiana Code § 35-43-4-3.

113.    Plaintiff suffered pecuniary loss as a result of Defendants violation of Indiana Code § 35-43-4-3.

114.    Pursuant to Indiana Code § 34-24-3-1, Plaintiff is entitled to the cost of its pecuniary loss, treble damages, the costs of this action, and its attorney's fees.

## VII.

### PARTICIPATORY THEORIES RESULTING IN JOINT AND SEVERAL LIABILITY

### PIERCING THE CORPORATE VEIL

115.    Plaintiff hereby alleges and incorporates the preceding paragraphs of this Verified Complaint as if fully set forth herein.

116.    Defendants' corporate forms should be disregarded and their corporate veils should be pierced because the forms were used as a sham to perpetuate a fraud upon Plaintiff.

117.    Defendants' corporate forms should be disregarded and their corporate veils should be pierced because they were organized and operated as a mere tool, business conduit, and/or alter ego for each other and/or Proler.

118.    Defendants' corporate forms should be disregarded and their corporate veils should be pierced because their corporate forms were used to evade a legal obligation.

119.    Defendants' corporate forms should be disregarded and their corporate veils should be pierced because their corporate forms were used to hide a crime, commit a crime, and/or to justify a wrong.

120.   Defendants' corporate forms should be disregarded and their corporate veils should be pierced because Defendants inadequately capitalized PH Steel.

## ALTER EGO LIABILITY

121.    Plaintiff hereby alleges and incorporates the preceding paragraphs of this Verified Complaint as if fully set forth herein.

122.   Defendants are so closely connected that Plaintiff should be able to sue each for the actions of PH Steel.

123.   Defendants use similar corporate names; the corporations share common principal corporate officers, directors, and employees; the business purpose of the corporations are similar; and the corporations are located in the same offices and use the same telephone numbers and email addresses.

124.   Defendants' corporate identities should be disregarded under the alter ego doctrine because they are operated as a single entity; manipulated and/or controlled as a single enterprise through their interrelationship; and caused illegality, fraud, and/or injustice or attempted to enable one economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise.

125.   Moreover, Defendants intermingled and continue to intermingle business transactions, functions, property, employees, funds, records, and corporate names in dealing with Plaintiff and the public.

126.   Inequity would result if Defendants were allowed to use PH Steel as a shield from liability.

127.   This Court should pierce the corporate veil to hold all Defendants joint and severally liable based on their status as alter egos of one another.

## CIVIL CONSPIRACY

128.    Plaintiff hereby alleges and incorporates the preceding paragraphs of this Verified Complaint as if fully set forth herein.

129.    Defendants were members of a combination of two or more persons.

130.    The object of Defendants' conspiracy was to accomplish an unlawful purpose or a lawful purpose by unlawful means.

131.    The Defendants had a meeting of the minds to accomplish their unlawful purpose Or lawful purpose by unlawful means.

132.    The Defendants committed an unlawful overt act in furtherance of the conspiracy.

133.    The Defendants' wrongful and unlawful acts caused injury to Plaintiff.

## ASSISTING AND ENCOURAGING LIABILITY

134.    Plaintiff hereby alleges and incorporates the preceding paragraphs of this Verified Complaint as if fully set forth herein.

135.    The primary acting defendant, PH Steel, had a duty to Plaintiff to compensate Plaintiff for PH Steel's lease of Plaintiff's Equipment and to return the Equipment undamaged pursuant to the terms of the Contract.

136.    All Defendants had knowledge that primary defendant, PH Steel's, conduct constituted a tort.

137.    All Defendants intended to unlawfully and substantially assist and/or encourage the primary defendant, PH Steel's, torts.

138.    Proler, PHD, The Proler Group, J-3 Metals, and PWH's unlawful assistance and/or encouragement of the primary acting defendant, PH Steel, were a substantial factor in causing a tort upon Plaintiff.

## ASSISTING AND PARTICIPATING LIABILITY

139.    Plaintiff hereby alleges and incorporates the preceding paragraphs of this Verified Complaint as if fully set forth herein.

140.    The primary acting Defendant, PH Steel, committed torts against Plaintiff, as well a breached the Contract with Plaintiff.

141.    Proler, PHD, The Proler Group, J-3 Metals, and PWH provided substantial assistance to the primary defendant, PH Steel.

142.    Proler, PHD, The Proler Group, J-3 Metals, and PWH conduct in assisting and participating in the primary acting defendant, PH Steel's, unlawful conduct was a breach of a duty owed to Plaintiff and/or consisted of a tort committed upon Plaintiff.

143.    Proler, PHD, The Proler Group, J-3 Metals, and PWH unlawful assistance and/or participation to the primary acting defendant, PH Steel, were substantial factors in causing a tort upon Plaintiff.

## VIII.

## DAMAGES

144.    Defendants are each jointly and severally liable to Plaintiff for all of the actual and consequential damages caused to Plaintiff.

145.    Defendants are each jointly and severally liable to Plaintiff for the outstanding amounts owed by Defendants to Plaintiff pursuant to the unpaid Invoices in the principal amount of Four Hundred Five Thousand Five Hundred Seventy Dollars ($405,570) plus 1.5% interest per month on each outstanding Invoice from the fate each was issued.

146.    Defendants are each jointly and severally liable to Plaintiff for the cost to repair the Equipment or, if necessary, the cost to replace the Equipment.

147.    Defendants are each jointly and severally liable to Plaintiff for the cost of the rental period during which the Equipment undergoes repairs.

148.    Defendants are each jointly and severally liable to Plaintiff for the costs to repossess and store the Equipment.

149.    Plaintiff seeks the imposition of additional, consequential, punitive, and exemplary damages against each Defendant, joint and severally, for the claims asserted in this action.

150.    Plaintiff seeks recovery from Defendants for attorney's fees, all court costs and expenses, and pre-judgment and post-judgment interest at the maximum statutory rate.

## IX.

## CONDITIONS PRECEDENT

151.    All conditions precedent to Plaintiff's right to recovery from Defendants have occurred.

## X.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff, Sterett Equipment Company, LLC, prays that Defendants be duly cited to appear, answer this Verified Complaint, and upon a final trial of this cause, that Plaintiff recover any and all remedies requested herein, and for such other relief that may be just and equitable in the premises.

Respectfully submitted,

RICCIO LAW, PLLC

By:

Christopher W. Riccio
Commonwealth of Kentucky Bar No. 98154
Indiana State Bar No. 35652-82
100 E Veterans Blvd., First Floor
Owensboro, Kentucky 42303
Telephone:     (270) 313-5074
Email:          ricccw8@gmail.com
*Counsel for Plaintiff*

22

## VERIFICATION

**COMMONWEALTH OF KENTUCKY** )
**COUNTY OF DAVIESS** )

Before me, the undersigned notary, on this day personally appeared the Chief Financial Officer of Sterett Equipment Company, LLC, Nolan Thomas, the affiant, a person whose identity is known to me. After I administered an oath to affiant, affiant testified:

"My name is Nolan Thomas. I am the Chief Financial Officer for Sterett Equipment Company, LLC. I am capable of making this verification. I have read the "VERIFIED COMPLAINT" and attachments thereto. The facts stated in it are within my personal knowledge and are true and correct to the best of my knowledge and belief."

_____
Nolan Thomas

Sworn to and subscribed before me by Nolan Thomas on the 28 day of October, 2022.

_____
Notary Public: Anita H. Bunch
My Comm. Expires: 8/23/26
Notary ID# KYNP57697

23