# UNITED STATES DISTRICT COURT     EASTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| STERETT EQUIPMENT COMPANY, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:22-CV-476 |
| | § | |
| PH STEEL, INC., REFINED METALS, | § | |
| LLC, *fka The Proler Group, LLC, fka* | § | |
| *PHD Holdings, LLC*, J-3 METALS | § | |
| RECYCLING CENTER, LLC, PWH | § | |
| HOLDINGS, LLC, and CRIS PROLER, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the court are Defendant PH Steel, Inc.'s ("PH Steel") Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (#56); Defendants Refined Metals, LLC ("Refined Metals") and J-3 Metals Recycling Center, LLC's ("J-3 Metals") Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (#53); and Defendants PWH Holdings, LLC ("PWH") and Cris Proler's ("Proler") Rule 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint (#55). Also pending before the court is PH Steel's Unopposed Motion for Extension of Time to Designate Third Parties (#68). Having considered the motions, the submissions of the parties, the record, and the applicable law, the court is of the opinion that motions to dismiss (#s 56, 53, 55) should be granted in part and denied in part and the Motion for Extension of Time to Designate Third Parties (#68) should be granted.

I.    Background

Plaintiff Sterett Equipment Company, LLC ("Sterett") claims that on or about August 6, 2021, it entered into a contract with PH Steel, signed by Proler, wherein Sterett agreed to lease a modular barge and a 330-ton crawler crane (the "Equipment") to PH Steel.  Sterett contends that it initially received payments pursuant to the rental agreement[1]; however, it did not receive payments for the invoices dated April 2022 through September 2022.  Sterett states that it gave PH Steel notice of default under the contract on September 28, 2022, and subsequently repossessed the Equipment.  Sterett further alleges that the Equipment sustained damage while in Defendants' possession.  Moreover, Sterett contends that Defendants subleased the Equipment to Heavy Metal Recycling, LLC ("Heavy Metal") without Sterett's knowledge or consent, in violation of the contract.

On October 31, 2022, Sterett filed its Complaint (#1).  On May 1, 2023, this court held a Scheduling Conference, wherein the court granted Sterett leave to amend its complaint to "correct the names of the defendants, streamline its causes of action, and remedy any other issues" (#49).  On May 30, 2023, Sterett filed its First Amended Complaint (the "Amended Complaint") (#50) against PH Steel, Refined Metals, J-3 Metals, PWH (collectively, "Corporate Defendants"), and Proler (collectively, "Defendants").  Sterett's Amended Complaint asserts causes of action for: breach of contract, fraud, fraudulent concealment, fraudulent inducement, unjust enrichment, quantum meruit, promissory estoppel, and conversion.  Sterett further avers that Defendants are jointly and severally liable under the theories of piercing the corporate veil, alter ego liability, and

---

[1] Sterett contends that, in addition to receiving payments from PH Steel, it also received multiple payments on the contract from PWH.

civil conspiracy.  Sterett seeks to recover monetary damages pursuant to the terms of the contract for:  the outstanding amounts owed pursuant to the unpaid invoices plus 1.5% interest; the cost to repair the Equipment; the cost of the rental period during which the Equipment undergoes repairs; the costs to repossess and store the Equipment; and attorneys' fees and costs.  Sterett also seeks "additional, consequential, punitive, and exemplary damages."

## II.   Failure to State a Claim

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests only the formal sufficiency of the statement of a claim for relief and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face"); *Spano ex rel. C.S. v. Whole Foods, Inc.*, 65 F.4th 260, 262 (5th Cir. 2023) (quoting *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018)); *Coleman E. Adler & Sons, L.L.C. v. Axis Surplus Ins. Co.*, 49 F.4th 894, 896 (5th Cir. 2022); *IberiaBank Corp. v. Ill. Union Ins. Co.*, 953 F.3d 339, 345 (5th Cir. 2020); *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 734 (5th Cir. 2019).  Such a motion is "not meant to resolve disputed facts or test the merits of a lawsuit" and "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020); *Oyekwe v. Rsch. Now Grp., Inc.*, 542 F. Supp. 3d 496, 502 (N.D. Tex. 2021); 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND

PROCEDURE § 1356 (3d ed. 2019).  In ruling on such a motion, the court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in favor of the plaintiff.  *Hernandez v. Mesa*, 582 U.S. 548, 550 (2017); *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 2571 (2022); *IberiaBank Corp.*, 953 F.3d at 345 (citing *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013)); *Walker*, 938 F.3d at 735.  The court, however, does not "strain to find inferences favorable to the plaintiff[]" or "accept conclusory allegations, unwarranted deductions, or legal conclusions." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004); *accord Ruvalcaba v. Angleton Indep. Sch. Dist.*, No. 20-40491, 2022 WL 340592, at *3 (5th Cir. Feb. 4, 2022); *Modelist v. Miller*, 445 F. App'x 737, 739 (5th Cir. 2011); *Jones v. Dickerson*, No. CV H-19-3876, 2020 WL 6504456, at *2 (S.D. Tex. Nov. 5, 2020).

"[T]he plaintiff's complaint [must] be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged."  *Oscar Renda Contracting, Inc. v. Lubbock*, 463 F.3d 378, 381 (5th Cir. 2006) (citing *Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989)), *cert. denied*, 549 U.S. 1339 (2007); *Ramming*, 281 F.3d at 161; *Pathology Lab'y Inc. v. Mt. Hawley Ins. Co.*, 552 F. Supp. 3d 617, 621 (W.D. La. 2021).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *accord Spano ex rel. C.S.*, 65 F.4th at 262; *King v. Baylor Univ.*, 46 F.4th 344, 355 (5th Cir. 2022); *Davis v. Tex. Health & Hum. Servs. Comm'n*, 761 F. App'x 451, 454 (5th Cir. 2019); *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 533 (5th Cir. 2016), *cert. denied*, 137 S. Ct. 1374 (2017).  "Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has

alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Walker*, 938 F.3d at 734 (quoting *Iqbal*, 556 U.S. at 678); *accord King*, 46 F.4th at 355.  Hence, "a complaint's allegations 'must make relief plausible, not merely conceivable, when taken as true.'" *Walker*, 938 F.3d at 734 (quoting *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009)); *see King*, 46 F.4th at 355; *Longoria ex rel. M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 263 (5th Cir. 2019) ("Though the complaint need not contain 'detailed factual allegations,' it must contain sufficient factual material to 'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" (quoting *Iqbal*, 556 U.S. at 678)).

Generally, the court may not look beyond the four corners of the plaintiff's pleadings. *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 261 (5th Cir. 1999); *see King*, 46 F.4th at 356; *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir.), *cert. denied*, 567 U.S. 936 (2012); *Hicks v. Lingle*, 370 F. App'x 497, 498 (5th Cir.), *cert. denied*, 562 U.S. 1111 (2010).  The court may, however, consider "documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *see Innova Hosp. San Antonio, L.P.*, 892 F.3d at 726 ("[A] court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" (quoting *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011))); *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 (5th Cir. 2012); *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

A Rule 12(b)(6) motion to dismiss must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure. *Twombly*, 550 U.S. at 555. Accordingly, a district court should not dismiss a complaint for failure to state a claim unless a plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *accord King*, 46 F.4th at 355; *IberiaBank Corp.*, 953 F.3d at 345 (quoting *Iqbal*, 556 U.S. at 678); *Zastrow v. Hous. Auto Imps. Greenway Ltd.*, 789 F.3d 553, 559 (5th Cir. 2015); *Leal*, 731 F.3d at 410; *Wilson*, 667 F.3d at 595. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Coleman v. Sweetin*, 745 F.3d 756, 763 (5th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678); *accord Hamilton v. Dallas County*, 79 F.4th 494, 499 (5th Cir. 2023); *King*, 46 F.4th at 355-56; *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Walker*, 938 F.3d at 735 (quoting *Iqbal*, 556 U.S. at 678); *accord King*, 46 F.4th at 356. "Factual allegations that are 'merely consistent with a defendant's liability, stop short of the line between possibility and plausibility of entitlement to relief,' and thus are inadequate." *Walker*, 938 F.3d at 735. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Shaw v. Villanueva*, 918 F.3d 414, 415 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678); *accord King*, 46 F.4th at 356 ("[C]ourts 'do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.'" (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005))); *Gibson v. Tex. Dep't of Ins.–Div. of Workers' Comp.*, 700 F.3d 227, 233 (5th Cir. 2012).

6

"Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *Shaw*, 918 F.3d at 419.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *Shaw*, 918 F.3d at 419; *Collins v. Robinson Indep. Sch. Dist.*, No. W-21-CV-00657, 2022 WL 2019294, at *1 (W.D. Tex. June 6, 2022).  In other words, to state a cognizable cause of action, the complaint must allege sufficient facts to "nudge" the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *Leal*, 731 F.3d at 410; *see Walker*, 938 F.3d at 734 (quoting *Grubbs*, 565 F.3d at 186).

Generally, however, a court should not dismiss an action for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend. *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) (plaintiff's failure to meet the specific pleading requirements should not automatically or inflexibly result in dismissal of the complaint with prejudice to refiling); *accord Strickland v. Bank of N.Y. Mellon*, 838 F. App'x 815, 821 (5th Cir. 2020); *Young v. U.S. Postal Serv. ex rel. Donahoe*, 620 F. App'x 241, 245 (5th Cir. 2015); *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003); *Hernandez v. Roche*, No. EP-20-CV-00263-DCG, 2021 WL 4205610, at *6 (W.D. Tex. Sept. 16, 2021).

> Under Rule 12(b)(6), a plaintiff with an arguable claim is ordinarily accorded notice of a pending motion to dismiss for failure to state a claim and an opportunity to amend the complaint before the motion is ruled upon.  These procedures alert him to the legal theory underlying the defendant's challenge, and enable him

> meaningfully to respond by opposing the motion to dismiss on legal grounds or by clarifying his factual allegations so as to conform with the requirements of a valid legal cause of action.

*Neitzke v. Williams*, 490 U.S. 319, 329-30 (1989).

"Whether leave to amend should be granted is entrusted to the sound discretion of the district court." *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir.) (quoting *Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998)), *cert. denied*, 537 U.S. 1044 (2002); *accord Aldridge v. Miss. Dep't of Corr.*, 990 F.3d 868, 878 (5th Cir. 2021); *United States ex rel. Porter v. Magnolia Health Plan, Inc.*, 810 F. App'x 237, 243 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1238 (2021); *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014).   Federal Rule of Civil Procedure 15(a) "requires a trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend." *Marucci Sports, L.L.C.*, 751 F.3d at 378 (quoting *Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 994 (5th Cir. 2005)); *Ackerson*, 589 F.3d at 208 ("[T]here is a strong presumption in favor of granting leave to amend[.]"); *accord Magnolia Health Plan, Inc.*, 810 F. App'x at 243.

## III.   Choice of Law

In diversity cases, federal courts follow the choice of law rules of the forum state, here Texas. *Nix v. Major League Baseball*, 62 F.4th 920, 932 (5th Cir.), *cert. denied*, 144 S. Ct. 165 (2023); *PCL Civil Constructors, Inc. v. Arch Ins. Co.*, 979 F.3d 1070, 1073 n.1 (5th Cir. 2020); *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 771 (5th Cir. 2016) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941)).   Courts must "first determine if the laws are in conflict." *SAVA v. Advanced Polymer Sci., Inc.*, 128 S.W.3d 304, 314 (Tex. App.—Dallas 2004,

no pet.); *accord Carrillo v. Tifco Indus., Inc.*, 547 F. App'x 419, 421 (5th Cir. 2013); *LHC Nashua P'ship, Ltd. v. PDNED Sagamore Nashua, L.L.C.*, 659 F.3d 450, 456-57 (5th Cir. 2011); *Pickle v. Universal Cable Holdings, Inc.*, 534 F. Supp. 3d 663, 671 (N.D. Tex. 2021); *In re Publicaciones E. Impresos del Norte, S. de R.L. de C.V.*, 661 S.W.3d 569, 583 n.12  (Tex. App.—El Paso 2023, no pet.).  "If the result would be the same under the laws of either jurisdiction, there is no need to resolve the choice of law question."  *SAVA*, 128 S.W.3d at 314; *see Bailey v. Shell W. E&P, Inc.*, 609 F.3d 710, 722 (5th Cir.), *cert. denied*, 562 U.S. 982 (2010); *L.O.D.C. Grp., Ltd v. Accelerate360, LLC*, 621 F. Supp. 3d 716, 722 (E.D. Tex. 2022). Texas courts do not undertake a choice of law analysis "in the absence of a true conflict." *Vandeventer v. All Am. Life & Cas. Co.*, 101 S.W.3d 703, 711-12 (Tex. App.—Fort Worth 2003, no pet.); *see Bailey*, 609 F.3d at 723; *Pickle*, 534 F. Supp. 3d at 671.  The party asserting that a different law applies has the burden of showing that a conflict of laws exists.  *See Centex Homes v. Lexington Ins. Co.*, No. 3:13-CV-719-BN, 2014 WL 1225501, at *5 (N.D. Tex. Mar. 25, 2014) (quoting *Holden v. Capri Lighting, Inc.*, 960 S.W.2d 831, 833 (Tex. App.—Amarillo 1997, no pet.)); *Janvey v. Alguire*, 846 F. Supp. 2d 662, 671 (N.D. Tex. 2011).

Courts must also make an initial determination of whether the agreements at issue contain a choice of law provision and whether that provision should be controlling.  *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004).  The Supreme Court of Texas has held that contractual choice-of-law provisions should generally be enforced.  *Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 324 (Tex. 2014); *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677-78 (Tex. 1990), *cert. denied*, 498 U.S. 1048 (1991); *see Int'l Interests, L.P. v. Hardy*, 448 F.3d 303, 306-07 (5th Cir. 2006); *Fina, Inc. v. ARCO*, 200 F.3d 266, 269 (5th Cir. 2000).  "The

most basic policy of contract law is the protection of the justified expectations of the parties." *Nexen Inc. v. Gulf Interstate Eng'g Co.*, 224 S.W.3d 412, 419 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (quoting *Chase Manhattan Bank, N.A. v. Greenbriar N. Section II*, 835 S.W.2d 720, 723 (Tex. App.—Houston [1st Dist.] 1992, no writ)); *accord Hoisting Wire Rope & Sling, LLC v. Accu-Tech Comput. Servs.*, No. 2:16-CV-61, 2017 WL 6816502, at *4 (S.D. Tex. Dec. 15, 2017); *DeSantis*, 793 S.W.2d at 677. "The parties' understanding of their respective rights and obligations under the contract depends in part upon how certain they are about how the law will interpret and enforce their agreement." *Chase Manhattan Bank, N.A.*, 835 S.W.2d at 723 (citing *DeSantis*, 793 S.W.2d at 677). "Judicial respect for their choice promotes the policy of protecting their expectations." *Id.* (citing *DeSantis*, 793 S.W.2d at 677); *accord Cudd Pressure Control, Inc. v. Sonat Expl. Co.*, 202 S.W.3d 901, 904 (Tex. App.—Texarkana 2006, no pet.); *Mary Kay Inc. v. Woolf*, 146 S.W.3d 813, 816 (Tex. App.—Dallas 2004, pet. denied), *cert. denied*, 544 U.S. 1061 (2005).

Here, the contract specifies: "This agreement shall be interpreted and enforced according to the laws of the State of Indiana." Texas and Indiana law differ as to the essential elements of a breach of contract claim. Texas law requires a plaintiff to establish the following four elements: (1) the existence of a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach. *Wesdem, L.L.C. v. Ill. Tool Works, Inc.*, 70 F.4th 285, 294 (5th Cir. 2023); *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 415 (5th Cir. 2021); *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018); *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018). In contrast, Indiana law does not require a

plaintiff to show performance.   Under Indiana law, "[t]he essential elements of a breach of contract action are the existence of a contract, the defendant's breach thereof, and damages." *Berg v. Berg*, 170 N.E.3d 224, 231, 2021 WL 2658991 (Ind. 2021) (quoting *Fowler v. Campbell*, 612 N.E.2d 596, 600 (Ind. Ct. App. 1993)); *Trs. of Ind. Univ. v. Spiegel*, 186 N.E.3d 1151, 1158 (Ind. Ct. App. 2022) ("To recover for a breach of contract, a plaintiff must prove that:  (1) a contract existed, (2) the defendant breached the contract, and (3) the plaintiff suffered damage as a result of the defendant's breach." (quoting *Collins v. McKinney*, 871 N.E.2d 363, 370 (Ind. Ct. App. 2007))).

Because Texas law gives effect to choice of law clauses regarding construction of a contract, the court will respect the parties' determination that their agreement be construed under Indiana law and apply Indiana law to the contract claim.   The contractual choice of law clause at hand, however, governs only the interpretation and enforcement of the contractual agreement.   *See Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726 (5th Cir.) (holding that "narrow" contract clause, which stated that the "[a]greement shall be governed by, and construed in accordance with, the internal laws of the State of New York," dealt with only the construction and interpretation of the contract), *opinion modified on denial of reh'g*, 355 F.3d 356 (5th Cir. 2003); *C-Bons Int'l Golf Grp., Inc. v. Lexington Ins. Co.*, No. 3:19-CV-0663-B, 2019 WL 5427574, at *3 (N.D. Tex. Oct. 22, 2019) ("Texas law requires a court to read a choice-of-law provision narrowly."); *Stier v. Reading & Bates Corp.*, 992 S.W.2d 423, 433 (Tex. 1999) (holding that a provision stating that an "agreement shall be interpreted and enforced in accordance with the laws of the State of Texas, . . . applies only to the interpretation and enforcement of the contractual agreement.  It does not purport to encompass all disputes between the parties or to encompass tort

11

claims."). Moreover, the contract in this matter states that "[t]he parties agree that Lessor's rights under this lease are cumulative and shall be in addition to all other remedies in its favor existing at law or in equity." In any event, the parties have failed to identify any conflicts between Indiana and Texas tort law relevant to this lawsuit. Accordingly, the court will apply Texas law to Sterett's tort claims, including the claims of fraud, unjust enrichment, quantum meruit, promissory estoppel, and conversion, as well as civil conspiracy. As discussed below, Sterett's attempt to pierce the corporate veil is also governed by Texas law.

IV.     PH Steel's Motion to Dismiss

In PH Steel's pending motion, it seeks dismissal of "all of Sterett's claims made against PH Steel" pursuant to Rule 12(b)(6).

A.      Breach of Contract

PH Steel's motion to dismiss states that Sterett fails to plead adequately the elements of all six of its causes of action, including "Count I—Breach of Contract." PH Steel, however, fails to specify how Sterett's pleading falls short of stating a breach of contract claim. PH Steel acknowledges that "[t]his case is essentially a contractual dispute of a lease between Sterett and PH Steel."

As stated previously, under Indiana law, the essential elements of a breach of contract claim are:  (1) a contract existed, (2) the defendant breached the contract, and (3) the plaintiff suffered damage as a result of the defendant's breach." *Berg*, 170 N.E.3d at 231; *Trs. of Ind. Univ.*, 186 N.E.3d at 1158. Sterett's Amended Complaint adequately addresses each of these elements. Sterett claims that a valid contract existed between the parties and attached a copy of

the contract to its Amended Complaint.  Sterett alleges that PH Steel breached the contract by ceasing to make the monthly payments as agreed upon; failing to pay for damages to the Equipment; and subleasing the Equipment to Heavy Metals.  Lastly, Sterett contends that it incurred damages as a result of the breach, such as the the outstanding amounts owed under contract and the costs to repair the Equipment.  Accordingly, PH Steel's motion to dismiss Sterett's breach of contract claim is denied.

B.     Consequential Damages

PH Steel contends that Sterett fails to state a claim for recovery of consequential damages. Specifically, PH Steel challenges Sterett's claim for compensation for the alleged damage done to the Equipment.  PH Steel avers that Sterett fails to allege "how, when, by whom, and to what extent" the Equipment was damaged.

Under Indiana law, "[c]onsequential damages may be awarded on a breach of contract claim when the non-breaching party's loss flows naturally and probably from the breach and was contemplated by the parties when the contract was made."[2] *Johnson v. Scandia Assocs., Inc.*, 717 N.E.2d 24, 31 (Ind. 1999) (citing *Western Union Tel. Co. v. Biggerstaff*, 97 N.E. 531 (Ind. 1912)); *Indianapolis City Mkt. Corp. v. MAV, Inc.*, 915 N.E.2d 1013, 1024 (Ind. Ct. App. 2009). Consequential damages may include lost profits, provided the evidence is sufficient to allow the trier of fact to estimate the amount with a reasonable degree of certainty and exactness.  *Otter Creek Trading Co. v. PCM Enviro PTY, LTD*, 60 N.E.3d 217, 230 (Ind. Ct. App. 2016) (quoting *Clark's Pork Farms v. Sand Livestock Sys., Inc.*, 563 N.E.2d 1292, 1298 (Ind. Ct. App. 1990)).

---

[2] Consequential damages resulting from Sterett's claim for breach of contract are governed by Indiana law.

The Amended Complaint alleges that "the Equipment was damaged while in Defendants' possession" and that:

> Specifically as to the crane, Sterett incurred damages in the amount of Eighty Thousand Eight Hundred Eighty Four Dollars ($80,884.00) for replacement of the boom from the manufacturer, Liebherr (the "Liebherr Invoice"); Nine Thousand Seven Hundred Thirty Three Dollars ($9,733.00) for other parts and repairs as evidenced by Work Order 21750; Three Thousand Five Hundred Dollars ($3,500.00) for freight to move the main boom tip to the repair shop (Bohen Equipment & Repair) for lacing repair; and One Thousand Seven Hundred Seventy Three Dollars and Seventy-Five Cents ($1,773.75) for additional labor and repairs to the crane before operation (the "Kiwi Cranes Labor Invoice"). Additionally, multiple barges were damaged, and Sterett is currently paying a third party repair company for their work to attempt to repair the barges without exceeding the contractual cost to replace those barges. Sterett has also incurred the contractual replacement cost of six (6) deck cleats for barges at the cost of Nine Hundred Dollars ($900.00) each, totaling Five Thousand Four Hundred Dollars ($5,400.00).

The court finds that this description, taken together with Sterett's pleading, is sufficient to state a claim for damage incurred to the Equipment.

C.    <u>Fraud Claims</u>

PH Steel asserts that "Sterett fails to plead with specificity the 'when,' 'where,' and 'how,' which is . . . fatal to its fraud claim." Notably, PH Steel does not distinguish Sterett's fraud, fraud by non-disclosure, and fraudulent inducement claims.

In order to succeed on a fraud claim, Sterett's pleading must satisfy the federal pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure. *See Pace v. Cirrus Design Corp.*, 93 F.4th 879, 889 (5th Cir. 2024); *Port of Corpus Christi Auth. v. Sherwin Alumina Co., L.L.C. (In re Sherwin Alumina Co., L.L.C.)*, 952 F.3d 229, 235 (5th Cir. 2020). Rule 9(b) provides that in order to state a claim for fraud in federal court, the plaintiff must state with particularity the circumstances constituting the fraud. *See* FED. R. CIV. P. 9(b); *Tellabs, Inc. v. Makor Issues &*

14

*Rts., Ltd.*, 551 U.S. 308, 319 (2007); *Pace*, 93 F.4th at 889-90; *Stringer v. Remington Arms Co., L.L.C.*, 52 F.4th 660, 661 (5th Cir. 2022); *In re Sherwin Alumina Co., L.L.C.*, 952 F.3d at 235; *Mun. Emps.' Ret. Sys. of Mich. v. Pier 1 Imps., Inc.*, 935 F.3d 424, 429 (5th Cir. 2019). Specifically, Rule 9(b) states:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

FED. R. CIV. P. 9(b); *see Tellabs, Inc.*, 551 U.S. at 319; *Pace*, 93 F.4th at 889; *In re Sherwin Alumina Co., L.L.C.*, 952 F.3d at 235; *Mun. Emps.' Ret. Sys. of Mich.*, 935 F.3d at 429; *IAS Servs. Grp., L.L.C. v. Jim Buckley & Assocs., Inc.*, 900 F.3d 640, 647 (5th Cir. 2018). Therefore, Rule 9(b) imposes a heightened standard of pleading for averments of fraud.  *See* FED. R. CIV. P. 8(a), 9(b); *Pace*, 93 F.4th at 889; *In re Sherwin Alumina Co., L.L.C.*, 952 F.3d at 235; *Mun. Emps.' Ret. Sys. of Mich.*, 935 F.3d at 429.  A party must plead, at the minimum, the "who, what, when, where, and how of the alleged fraud."  *In re Sherwin Alumina Co., L.L.C.*, 952 F.3d at 235; *accord Arruda v. Curves Int'l, Inc.*, 861 F. App'x 831, 834 (5th Cir. 2021); *United States ex rel. Colquitt v. Abbott Lab'ys.*, 858 F.3d 365, 371 (5th Cir. 2017).

In Texas, common law fraud may consist of an affirmative misrepresentation or, in certain circumstances, the concealment or non-disclosure of a material fact.  To recover for fraud or fraudulent inducement through affirmative misrepresentation, the plaintiff must establish that:

(1)     the defendant made a material representation concerning an existing fact;

(2)     the representation was false when it was made;

(3)      the speaker knew the misrepresentation was false, or made it recklessly without knowledge of its truth and as a positive assertion;

(4)      the speaker made the misrepresentation with the intent that it should be acted upon;

(5)      the plaintiff acted with justifiable reliance on the misrepresentation; and

(6)      the plaintiff suffered injury as a result.

*Wesdem, L.L.C.*, 70 F.4th at 291; *CBE Grp., Inc. v. Lexington L. Firm*, 993 F.3d 346, 350 (5th Cir. 2021) (quoting *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018)); *D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 218 (5th Cir. 2018); *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 496 (Tex. 2019); *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011). "Fraud is never presumed, and it is plaintiff's burden to allege and prove actionable fraud." *William B. Roberts, Inc. v. McDrilling Co.*, 579 S.W.2d 335, 339 (Tex. Civ. App.—Corpus Christi 1979, no writ); *accord Priddy v. Rawson*, 282 S.W.3d 588, 598 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

Fraudulent inducement "arises only in the context of a contract and requires the existence of a contract as part of its proof." *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001); *accord Binh Hoa Le*, 990 F.3d at 415 n.11. Stated differently, "the elements of fraud must be established as they relate to an agreement between the parties." *Haase*, 62 S.W.3d at 798-99; *see Wesdem, L.L.C.*, 70 F.4th at 291 n.4; *IAS Servs. Grp., L.L.C., Inc.*, 900 F.3d at 647.

Fraud by nondisclosure, another subtype of fraud, requires that the plaintiff prove that:  (1) the defendant deliberately failed to disclose material facts to the plaintiff

16

that the defendant had a duty to disclose, (2) the defendant knew the plaintiff was ignorant of the facts and that the plaintiff did not have an equal opportunity to discover them, (3) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting, and (4) the plaintiff relied on the nondisclosure and suffered injury as a result of that reliance.

*Jang Won Cho v. Kun Sik Kim*, 572 S.W.3d 783, 801 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *accord CBE Grp., Inc.,* 993 F.3d at 353; *D'Onofrio*, 888 F.3d at 218; *E-Learning LLC v. AT&T Corp.*, 517 S.W.3d 849, 862 (Tex. App.—San Antonio 2017, no pet.).

Sterett's Amended Complaint alleges that during the period of non-payment (April 2022 through September 2022), "PH Steel repeatedly promised payment shortly if Sterett would agree to allow it to continue its lease of the Equipment under the terms of the Contract." Sterett also attached "[a] true and accurate copy of an email exchange between Nolan Thomas, Sterett's Chief Financial Officer, and Jason Goldberg, President of The Proler Group, LLC and PH Steel, Inc. regarding PH Steel making a promise to pay Sterett" as Exhibit 11 to its Amended Complaint. Sterett further contends that PH Steel made these materially false representations in order to induce Sterett not to repossess the Equipment, and that PH Steel knew the representations were false or made the representations recklessly. The Amended Complaint further states that, during the lease period, PH Steel deliberately concealed from Sterett that it had subleased the Equipment to Heavy Metals, then fraudulently misrepresented to Sterett that PH Steel was still in possession of the Equipment in order to induce Sterett to refrain from declaring default. Thus, after considering Sterett's Amended Complaint as a whole, along with its attachments, the court finds that it has sufficiently identified the "when," "where," and "how" of the alleged fraudulent misrepresentation and fraud by non-dislcosuure as required by Rule 9(b).

17

The Amended Complaint, however, does not identify any false representations purportedly made by PH Steel with the intent to induce Sterett into *entering* the contract.  Rather, Sterett makes vague allegations such as:  "All Defendants conspired to fraudulently induce Sterett to enter into a bare rental lease agreement with PH Steel" and "Defendants conspired to perpetrate a fraud upon Sterett by inducing Sterett to lease the Equipment to PH Steel pursuant to the terms of the Contract that they solicited without intending to pay [Sterett]."  Such general allegations fail to meet the particularity requirements of Rule 9(b).  The pleading merely states that PH Steel solicited a quote from Sterett for a lease of the Equipment, and Sterett provided the quote and contract.  The pleading fails to specify any other communications that it contends were made before PH Steel entered into the lease agreement.  Rather, the Amended Complaint asserts that Defendants made knowingly false promises to make payments *after* the parties had entered into the agreement and in order to induce Sterett to allow Defendants to maintain possession of the Equipment.  In fact, Sterett admits that, initially, PH Steel made the required payments under the lease for several months.  Accordingly, PH Steel's motion to dismiss Sterett's fraudulent inducement claim is granted with leave to replead.

D.    Unjust Enrichment, Quantum Meruit, and Promissory Estoppel

PH Steel contends that Sterett's claims for unjust enrichment, quantum meruit, and promissory etsoppel should be dismissed because a plaintiff cannot recover under these theories of liability when a valid express contract covers the subject matter of the parties' dispute.  As Sterett points out, however, even if alternative theories of recovery are supported by the same factual allegations, they are not necessarily subject to dismissal.  Federal Rule of Civil Procedure 8(a) allows a plaintiff to demand relief under alternative theories.  FED. R. CIV. P. 8(a); *see Nat.*

18

*Polymer Int'l Corp. v. Hartz Mountain Corp.*, 426 F. Supp. 3d 300, 310 (E.D. Tex. 2019) (holding that a plaintiff "may plead promissory estoppel and quantum meruit as alternative theories of recovery" to its breach of contract claim); *Miller v. CitiMortgage, Inc.*, 970 F. Supp. 2d 568, 588 (N.D. Tex. 2013) (stating that "a party to a contract may seek alternative relief under both contract and quasi-contract theories" (quoting *Woodcock v. Chase Home Fin., LLC*, No. H–11–1199, 2012 WL 393260, at *3 (S.D. Tex. Feb. 3, 2012))); *Triumph Aerostructures, LLC v. Lockheed Martin Corp.*, No. 3:10-CV-2030, 2011 WL 1336399, at *1 (N.D. Tex. Apr. 6, 2011) ("[U]nder Texas law, 'a party may plead alternative theories of recovery in contract and quantum meruit, but if [it] proves the existence of an enforceable contract, [it] may not recover in quantum meruit.'" (quoting *Cole v. Benavides*, 481 F.2d 559, 561 (5th Cir. 1973))); *WHC Franchise Corp. v. Four JS Fam., LLLP*, No. 3:05-CV-0663-B, 2005 WL 8158394, at *1 (N.D. Tex. Nov. 30, 2005); *Infowise Sols., Inc. v. Microstrategy, Inc.*, No. CIV.A. 3:04-CV-0553, 2005 WL 2445436, at *7 (N.D. Tex. Sept. 29, 2005) (noting that Rule 8(a) allows a plaintiff to plead both breach of contract or unjust enrichment claims; however, a plaintiff may not recover under both claims for breach of contract and unjust enrichment). Sterett's Amended Complaint clearly pleads unjust enrichment, quantum meruit, and promissory estoppel as alternative theories of recovery. Accordingly, at this stage in the proceedings, the court finds Sterett's unjust enrichment, quantum meruit, and promissory estoppel claims are properly pleaded and are not subject to dismissal.

### E.    Conversion

"Under Texas law, conversion is the wrongful exercise of dominion and control over another's property in violation of the property owner's rights." *ITT Com. Fin. Corp. v. Bank of*

*the W.*, 166 F.3d 295, 305 (5th Cir. 1999) (citing *Amarillo Nat'l Bank v. Komatsu Zenoah Am.,*
*Inc.*, 991 F.2d 273, 274 (5th Cir. 1993); *Tripp Vill. Joint Venture v. MBank Lincoln Ctr., N.A.*,
774 S.W.2d 746, 750 (Tex. App.—Dallas 1989, writ denied)); *accord Mayo*, 354 F.3d at 410;
*Carson v. Dynegy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003); *Johnson v. Brewer & Pritchard,*
*P.C.*, 73 S.W.3d 193, 211 n.44 (Tex. 2002); *Bandy v. First State Bank*, 835 S.W.2d 609, 622
(Tex. 1992).

PH Steel contends that Sterett's conversion claim must be dismissed because the Amended
Complaint does not allege a demand or refusal to return the Equipment.  Additionally, PH Steel
asserts that Sterett fails to allege any facts supporting the unauthorized control element of
conversion.  Here, Sterett responds that demand and refusal are not necessary because PH Steel's
actions were a clear repudiation of Sterett's rights.  Specifically, Sterett notes that PH Steel
subleased the Equipment without authorization and damaged the Equipment to the extent that it
was inoperable following repossession.

In *National Union Fire Insurance Company v. Care Flight Air Ambulance Service, Inc.*,
the United States Court of Appeals for the Fifth Circuit held that a formal demand and refusal are
not always necessary to state a claim for conversion.  18 F.3d 323, 328 (5th Cir.) (quoting *Bures*
*v. First Nat. Bank, Port Lavaca*, 806 S.W.2d 935, 938 (Tex. App.—Corpus Christi-Edinburg
1991, no writ)), *cert. denied*, 513 U.S. 916 (1994).  In that case, General Electric Capital
Corporation ("GECC"), leased an aircraft to Care Flight Air Ambulance Service, Inc. ("Care
Flight").  *Id.* at 324.  The lease prohibited Care Flight from subleasing the aircraft without
GECC's consent and required Care Flight to insure the plane.  *Id.*  Care Flight obtained an
insurance policy from National Union Fire Insurance Co. ("National Union"), which excluded

coverage for loss due to conversion by or at the direction of the named insured.  *Id.*  Without seeking authorization from GECC, Care Flight subleased the aircraft to a third party, who in turn, subleased to another.  *Id.*  Ultimately, the sub-sublessee flew the plane to several Central and South American countries, and the Colombian government seized the plane for violating Colombian air traffic laws.  *Id.*  National Union filed for declaratory relief and moved for summary judgment, arguing that coverage was precluded because Care Flight had converted the plane.  The district court granted summary judgment in favor of National Union, ruling that Care Flight had converted the aircraft as a matter of law and that the conversion limitation in the insurance policy precluded coverage.  *Id.*

On appeal, the Fifth Circuit found that Care Flight's initial lawful possession of the plane did not preclude a finding of conversion and that "[f]ormal demand and refusal are not necessary if demand would be useless, or 'if the possessor's acts amount to a clear repudiation of the owner's rights.'"  *Id.* at 328 (quoting *Bures*, 806 S.W.2d at 938).  The Court also held that "[d]emand and refusal are not necessary if other proof demonstrates a conversion."  *Id.* (citing *Presley v. Cooper*, 284 S.W.2d 138, 141 (Tex. 1955)).  The Court found that "GECC's formal demand to Care Flight to return the aircraft would have been useless" and that "there was other proof that a conversion occurred so that demand and release were not necessary as a matter of law."  *Id.*  Accordingly, "the unauthorized sublease of the aircraft was a material breach" constituting a serious violations of Care Flight's right of control.  *Id.*  Ultimately, the Court concluded that "the conversion . . . occurred when Care Flight subleased the aircraft."  *Id.* at 329.

21

Similarly, here, Sterett contends that the lease at issue prohibits PH Steel from subleasing the Equipment without Sterett's consent, PH Steel subleased the Equipment to Heavy Metals without without Sterett's knowledge or consent, and PH Steel fraudulently misrepresented to Sterett that PH Steel was still in possession of the Equipment in order to induce Sterett to remain in the contract without declaring default.  Sterett further avers that the Equipment was damaged during this period, rendering it inoperable for months following Sterett's repossession.  As pleaded, the sublease was a clear repudiation of Sterett's rights, such that demand and refusal are unnecessary.  Accordingly, the court finds that Sterett has adequately pleaded a cause of action for conversion.  *See Nat'l Union Fire Ins. Co.*, 18 F.3d at 328 (affirming district court's holding that unauthorized sublease of an aircraft constituted "conversion" under Texas law, even though there lessor made no formal demand for return of plane).

F.     Economic Loss Rule

PH Steel avers that all tort-based claims asserted by Sterett should be dismissed because Sterett has not pleaded any exception to the economic loss rule.  In Texas, the economic loss rule "generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." *Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (citing *LAN/STV v. Martin K. Eby Const. Co.*, 435 S.W.3d 234, 242 (Tex. 2014)); *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007).  "In determining whether a claim can be brought as a tort, consideration must be given to 'the source of the defendant's duty to act (whether it arose solely out of the contract or from some common-law duty) and the nature of the remedy sought by the plaintiff.'" *Ibe v. Jones*, 836 F.3d 516, 526 (5th Cir. 2016) (quoting

22

*Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 13 (Tex. 1996)); *Golden Spread Coop., Inc. v. Emerson Process Mgmt. Power & Water Sols., Inc.*, 360 F. Supp. 3d 494, 517 n.21 (N.D. Tex. 2019) (quoting *Chapman Custom Homes, Inc.*, 445 S.W.3d at 718)), *aff'd*, 954 F.3d 804 (5th Cir. 2020)); *El Paso Mktg., L.P. v. Wolf Hollow I, L.P.*, 383 S.W.3d 138, 143 (Tex. 2012).  "Tort obligations are in general obligations that are imposed by law—apart from and independent of promises made and therefore apart from the manifested intention of the parties—to avoid injury to others." *El Paso Mktg., L.P.*, 383 S.W.3d at 142-43 (quoting *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991)); *accord Pease v. State Farm Lloyds*, 441 F. Supp. 3d 461, 465 (W.D. Tex. 2020).  That is, "a duty in tort does not lie when the only injury claimed is one for economic damages recoverable under a breach of contract claim." *LAN/STV*, 435 S.W.3d at 242 n.35 (quoting *Wansey v. Hole*, 379 S.W.3d 246, 248 (Tex. 2012)); *see Glob. Hunter, LLC v. Des Moines Flying Serv., Inc.*, No. 1:18-CV-062-C, 2019 WL 7757888, at *2 (N.D. Tex. June 18, 2019); *Strobach v. WesTex Cmty. Credit Union*, 621 S.W. 3d 856, 878 (Tex. App.—El Paso 2021, no pet.).

Thus, the rule restricts contracting parties to contractual remedies for economic losses associated with their relationship, "even when the breach might reasonably be viewed as a consequence of a contracting party's negligence." *Lamar Homes, Inc.*, 242 S.W.3d at 13 (citing *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986)); *accord Golden Spread Elec. Coop., Inc.*, 954 F.3d at 808.  The focus of the rule is whether "the only injury is economic loss to the subject of the contract itself," as such a claim would sound in contract. *LAN/STV*, 435 S.W.3d at 242 n.35 (quoting *½ Price Checks Cashed v. United Auto. Ins. Co.*, 344 S.W.3d 378, 387 (Tex. 2011)); *see Middaugh v. InterBank*, 528 F. Supp. 3d 509, 555 (N.D. Tex. 2021).

23

"But determining the application and effect of the economic loss rule is difficult, if not impossible, on a Rule 12(b)(6) motion where interpretation of a contract is required." *In re Waggoner Cattle, LLC*, No. 18-20126-RLJ-11, 2020 WL 13563748, at *4 (Bankr. N.D. Tex. Feb. 5, 2020), *adopted sub nom. by Lone Star Bank of W. Tex. v. Rabo AgServices, Inc.*, No. 2:19-CV-098-Z, 2020 WL 13563753 (N.D. Tex. Oct. 30, 2020). Sterett has pleaded several tort claims in addition to its breach of contract claim, including several alternative theories of recovery. Moreover, Sterett seeks to recover monetary damages pursuant to the terms of the contract (including outstanding amounts owed on the unpaid invoices plus 1.5% interest; the cost to repair the Equipment; the cost of the rental period during which the Equipment undergoes repairs; the costs to repossess and store the Equipment; and attorneys' fees and costs), as well as additional, consequential, punitive, and exemplary damages. Whether the economic loss rule bars certain claims may be determined only after the contract at issue has been interpreted and the rights of the parties under the agreement have been established. *See id*. Accordingly, "the economic loss rule, standing alone, does not, at this stage, require dismissal of [Sterett's] claims." *Id*.

V.   <u>Refined Metals and J-3 Metals's Motion to Dismiss and PWH and Proler's Motion to Dismiss</u>

Refined Metals and J-3 Metals as well as PWH and Proler filed substantially similar motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (#s 53 and 55), wherein they seek dismissal of any direct causes of action alleged against them, including any claim for consequential damages, as well as dismissal of all of Sterett's theories of joint and several liability.

A.      Direct Causes of Action

Refined Metals, J-3 Metals, PWH, and Proler contend that Sterett has failed to allege sufficient facts to support any direct cause of action against them.  The court agrees.  While Sterett generally declares that it "seeks to obtain monetary damages from Defendants as a result of their willful breach of contract, commission of torts . . . , and fraudulent inducement," the substantive counts of breach of contract, fraud, unjust enrichment, quantum meruit, promissory estoppel, and conversion are asserted against PH Steel and make no mention of Refined Metals, J-3 Metals, PWH, or Proler.  The Amended Complaint, taken as a whole, fails to include sufficient facts to support any of these direct causes of action against Refined Metals, J-3 Metals, PWH, and Proler.  In fact, it is not clear whether Sterett intends to assert its causes of action for breach of contract, fraud, unjust enrichment, quantum meruit, promissory estoppel, and conversion against all Defendants or against PH Steel alone.

Accordingly, Refined Metals, J-3 Metals, PWH, and Proler's request to dismiss any direct causes of action for breach of contract, fraud, unjust enrichment, quantum meruit, promissory estoppel, and conversion alleged against them is granted to the extent that Sterett intends to assert any such claims.  The court, however, will consider Sterett's assertions of joint and several liability.

B.      Piercing the Corporate Veil

"Under Texas's choice-of-law rules, whether a corporation, LLC, or individual may be held liable pursuant to a veil-piercing theory is determined by the law of the state in which the entity is organized."  *AHBP LLC v. Lynd Co.*, 649 F. Supp. 3d 371, 385 (W.D. Tex. 2023)

(quoting *Ogbonna v. USPLabs, LLC*, No. EP-13-CV-347-KC, 2014 WL 2592097, at *5 (W.D. Tex. June 10, 2014)); *accrod* TEX. BUS. ORGS. CODE § 1.104; *Cali-Curl, Inc. v. Marianna Indus., Inc.*, No. 3:23-CV-00320-K, 2023 WL 6452379, at *5 (N.D. Tex. Oct. 3, 2023). Here, all of the Corporate Defendants, including PH Steel, were formed in Texas; therefore, Texas law will determine whether Refined Metals, J-3 Metals, PWH, and Proler can be held responsible for the alleged acts of PH Steel.

Sterett's assertion of veil piercing seeks to expand the scope of potential sources of relief by extending to Refined Metals, J-3 Metals, PWH, and Proler what is otherwise only PH Steel's liability. *See, e.g., Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 443 (5th Cir. 2013) ("Under Texas law, 'an assertion of veil piercing or corporate disregard does not create a substantive cause of action[;] . . . such theories are purely remedial and serve to expand the scope of potential sources of relief by extending to individual shareholders or other business entities what is otherwise only a corporate liability.'" (quoting *In re JNS Aviation, LLC*, 376 B.R. 500, 521 (Bankr. N.D. Tex. 2007))); *Bates Energy Oil & Gas v. Complete Oilfield Servs.*, 361 F. Supp. 3d 633, 666 (W.D. Tex. 2019) (comparing "direct tort claims against individuals who personally participated in the torts (direct individual capacity claims) and . . . veil piercing theories for contract claims and tort claims for which the corporation was liable but in which the individual corporate agent may or may not have personally participated (vicarious liability veil piercing claims)"). "Due to the limited liability that corporations and LLCs offer to their owners, a plaintiff seeking to impose individual liability on an owner must 'pierce the corporate veil.'" *Spring St. Partners-IV, L.P.*, 730 F.3d at 443; *accord Belliveau v. Barco, Inc.*, 987 F.3d 122, 128 (5th Cir. 2021) (quoting *In re Ritz*, 832 F.3d 560, 566 (5th Cir. 2016)).

26

Under Texas's veil piercing doctrine, courts may "disregard the corporate fiction . . . when the corporate form has been used as part of a basically unfair device to achieve an inequitable result." *Ledford v. Keen*, 9 F.4th 335, 339 (5th Cir. 2021) (quoting *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 454 (Tex. 2008)); *Spring St. Partners-IV, L.P.*, 730 F.3d at 443-44; *Castleberry v. Branscum*, 721 S.W.2d 270, 271 (Tex. 1986). "Veil-piercing and alter ego principles apply equally to corporations and LLCs." *Spring St. Partners-IV, L.P.*, 730 F.3d at 443.

"Texas law allows veil-piercing . . . only in limited circumstances." *In re Ritz*, 832 F.3d at 566. The Texas Supreme Court has stated that there are six situations in which courts may pierce the corporate veil:  (1) when the fiction is used as a means of perpetrating a fraud; (2) where a corporation is organized and operated as a mere tool or business conduit of another corporation; (3) where the corporate fiction is resorted to as a means of evading an existing legal obligation; (4) where the corporate fiction is employed to achieve or perpetrate monopoly; (5) where the corporate fiction is used to circumvent a statute; and (6) where the corporate fiction is relied upon as a protection of crime or to justify wrong.[3] *SSP Partners*, 275 S.W.3d at 454 (citing *Castleberry*, 721 S.W.2d at 271); *see W. Horizontal Drilling, Inc. v. Jonnet Energy Corp.*, 11 F.3d 65, 67 (5th Cir. 1994). The Fifth Circuit has distilled these six situations into three general theories for piercing the corporate veil:  (1) when the corporation is the alter ego of its shareholders or owners; (2) when the corporation is used for illegal purposes; or (3) when the

---

[3] "While noting the landmark *Castleberry* opinion stated in a footnote that '[i]nadequate capitalization is another basis for disregarding the corporate fiction,'" the Fifth Circuit has held that "under Texas law, undercapitalization alone would not be sufficient to pierce the corporate veil." *Ledford*, 9 F.4th at 340.

corporation is used as a sham to perpetrate a fraud.  *W. Horizontal Drilling, Inc.*, 11 F.3d at 67; *accord Rimade Ltd. v. Hubbard Enters., Inc.*, 388 F.3d 138, 143 (5th Cir. 2004); *AHBP LLC*, 649 F. Supp. 3d at 386.

Sterett's Amended Complaint contends that Defendants' corporate forms should be disregarded and their corporate veils should be pierced and lists a plethora of possible bases for doing so.[4]  These allegations, considered in context of the totality of the pleading, are plausibly limited to claims of alter ego and sham to perpetrate a fraud.  To the extent that Sterett intends to assert claims that extend beyond these two methods of piercing the corporate veil, they are indiscernible, conclusory, and vague; therefore, such claims are dismissed, subject to repleading.

The Texas Business Organizations Code ("TBOC") sets additional requirements for piercing the corporate veil in claims based on "any contractual obligation of the corporation or any matter relating to or arising from the obligation."[5]  TEX. BUS. ORGS. CODE § 21.223; *Ledford*, 9 F.4th at 339 n.5; *Belliveau*, 987 F.3d at 128 ("[V]eil piercing is now addressed by statute in Texas in such a way that piercing the corporate veil to impose personal liability for a contractual, or contractually related, obligation of a corporation is quite difficult."  (quoting Elizabeth S. Miller, *The Limits of Limited Liability:  Veil Piercing and Other Bases of Personal Liability of Owners, Governing Persons, and Agents of Texas Business Entities*, State Bar of Texas, 13th

---

[4] Sterett's Amended Complaint, paragraphs 116 through 120, lists the following reasons for veil piercing in this case:  the corporate forms were used as a sham to perpetrate a fraud upon Sterett; the Corporate Defendants were organized and operated as a mere tool, business conduit, and/or alter ego for each other and/or Proler; the Corporate Defendants' corporate forms were used to evade a legal obligation; the Corporate Defendants' corporate forms were used to hide a crime, commit a crime, and/or to justify a wrong; and the Corporate Defendants inadequately capitalized PH Steel.

[5] The Texas Legislature's original provision was codified in 1989 as article 2.21 of the Texas Business Corporations Act ("TBCA").

28

Annual Advanced Real Estate Strategies ch. 4, 2 (2019))); *Rimade Ltd.*, 388 F.3d at 143; *AHBP LLC*, 649 F. Supp. 3d at 386 ("Whether a plaintiff may pierce an entity's veil pursuant to either the alter ego theory or the sham to perpetrate a fraud theory depends on whether the plaintiff's claims sound in tort or contract.").

"Texas law thus insulates a shareholder from a corporation's contractual or contractually related obligations 'on the basis that the holder . . . is or was the alter ego of the corporation or on the basis of actual or constructive fraud, a sham to perpetrate a fraud, or other similar theory.'" *Belliveau*, 987 F.3d at 128 (quoting TEX. BUS. ORGS. CODE § 21.223(a)(2)).   In order to overcome the protection of TBOC § 21.223(a)(2) and hold a shareholder personally liable for a corporation's obligations, an obligee must "demonstrate[] that the . . . beneficial owner . . . caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the . . . beneficial owner.'" *Id.* (quoting TEX. BUS. ORGS. CODE § 21.223(b)).

"The protection of [TBOC § 21.223(a)(2)] applies to 'any contractual obligation of the corporation or any matter relating to or arising from the obligation,' indicating that it applies to claims holding a shareholder or owner liable for a contract-related corporate obligation (both contract and tort), the classic veil piercing scenario." *Bates Energy Oil & Gas*, 361 F. Supp. 3d at 673 (quoting TEX. BUS. ORGS. CODE § 21.223(a)(2)); *see Menetti v. Chavers*, 974 S.W.2d 168, 174 (Tex. App.—San Antonio 1998, no pet.).   The Fifth Circuit has explained that the purpose of the statute is "to strike a balance in economic regulation between contract claimants, who may protect themselves ex ante, and tort claimants who have no such opportunity." *Belliveau*, 987 F.3d at 129 (citing *Spring St. Partners-IV, L.P.*, 730 F.3d at 444).   "The basic notion was that

contract claimants, unlike most third parties suing in tort, had voluntarily chosen to deal with the corporation and, '[a]bsent some deception or fraud,' would have had the opportunity to apportion, through negotiated contract terms, the risk that the entity would be unable to meet its obligations." *Spring St. Partners-IV, L.P.*, 730 F.3d at 444 (quoting *Shook v. Walden*, 368 S.W.3d 604, 619-20 (Tex. App.—Austin 2012, no pet.)).

"'Actual fraud' is defined as 'involv[ing] dishonesty of purpose or intent to deceive.'" *Spring St. Partners-IV, L.P.*, 730 F.3d at 442-43 (quoting *Tryco Enters., Inc. v. Robinson*, 390 S.W.3d 497, 508 (Tex. App.—Houston [1 Dist.] 2012, writ dism'd)); *see Belliveau*, 987 F.3d at 129. "In the veil-piercing context, Texas courts have held that 'actual fraud is not equivalent to the tort of fraud.'" *Belliveau*, 987 F.3d at 129 (quoting *In re Ritz*, 832 F.3d at 567). "Some courts have held, for instance, that proving a material misrepresentation may not be required—even in connection with contractually originated claims." *Id.* (collecting cases). Here, claims subject to TBOC § 21.223 must meet the heightened requirements of Rule 9(b). *See Debut Sols. LLC v. Axion Structural Innovations, LLC*, No. 5:21-CV-56, 2021 WL 11723751, at *6 (S.D. Tex. Dec. 23, 2021) ("As Texas law requires 'an averment of fraud' to pierce the corporate veil, any requests for this remedy must meet Rule 9(b)'s heightened pleading standards.").

As noted above, Sterett has stated causes of action for breach of contract and multiple tort claims—including claims for fraud and conversion, as well as alternative causes of action for unjust enrichment, quantum meruit, and promissory estoppel. The parties dispute whether Sterett's tort claims are "related to or arise from" the contract at issue and, thus, are subject to the requirements of TBOC § 21.223. The court concludes that Sterett's fraud claims are related to or arise from the contract at issue, whereas the remainder of Sterett's tort claims do not. *See*

*Thrift v. Est. of Hubbard*, 44 F.3d 348, 354 (5th Cir. 1995) (holding that the liability imposed under TBOC § 21.223's predecesor, article 2.21 of the TBCA, "concerns 'shareholder liability for acts of the corporation in connection with contract claims'" (quoting *Farr v. Sun World Sav. Ass'n*, 810 S.W.2d 294, 296 (Tex. App.—El Paso 1991, no writ))); *Bates Energy Oil & Gas,* 361 F. Supp. 3d at 665-66 (discussing the history of TBOC § 21.223); *Menetti*, 974 S.W.2d at 174 (noting that the 1997 amendment to Article 2.21 of the TBCA extended the statute's coverage to "all contractual obligations of the corporation 'or any matter relating to or arising from the obligation,'" and "blur[red] the distinction between contractual obligations and other claims"). Sterett's fraud claims essentially contend that PH Steel made fraudulent misrepresentations or fraudulently failed to disclose information concerning the Equipment in order to induce Sterett to remain in the contract without declaring default.  In contrast, Sterett pleads unjust enrichment, quantum meruit, and promissory estoppel as alternative claims to its breach of contract cause of action and, therefore, the claims are distinct from any contractual obligation of PH Steel. Likewise, Sterett's conversion claim depends on an a tort-based duty not to exercise unauthorized dominion and control over the Equipment, separate from any contractual duty.  *See Nat'l Union Fire Ins. Co.*, 18 F.3d at 326-27.

Accordingly, with respect to its claims of breach of contract and fraud, Sterett must allege that Refined Metals, J-3 Metals, PWH, and/or Proler "caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on [Sterett] primarily for [their] direct personal benefit." Tex. Bus. Orgs. Code § 21.223(b); *Belliveau*, 987 F.3d at 128-29.  Sterett's claims for conversion, unjust enrichment, quantum meruit, and promissory estoppel claims, however, are subject to the common-law rules of veil-piercing.  *See Ledford*, 9 F.4th at 339 n.5;

31

*AHBP LLC*, 649 F. Supp. 3d at 386 ("Whereas a tort claimant may freely pierce the veil under either [the alter ego theory or the sham to perpetrate a fraud theory], a contract claimant may only pierce the veil if the defendant has also committed an actual fraud against the plaintiff for the defendant's direct personal benefit.").

### 1.    Breach of Contract and Fraud Claims

The court concludes that Sterett has not pleaded sufficient facts demonstrating that Refined Metals, J-3 Metals, PWH, and/or Proler perpetrated actual fraud on Sterett primarily for their personal benefit.  Sterett, at best, makes vague allegations of fraud against all Defendants without specifying as to which defendant the allegation pertains.  Specifically, the Amended Complaint maintains that "Defendants conspired to perpetrate a fraud upon Sterett by inducing Sterett to lease the Equipment to PH Steel pursuant to the terms of the Contract that they solicited without intending to pay Plaintiff," and "Furthermore, in indisputable breach of the Contract, Defendants fraudulently concealed from Sterett that they had subleased the Equipment to Heavy Metals without Sterett's knowledge or consent, and then fraudulently misrepresented to Sterett that PH Steel was still in possession of the Equipment in order to induce Sterett to remain in the Contract without declaring default."

"[R]eferring to the defendants collectively, 'without distinguishing which entity or persons committed the various alleged fraudulent conduct,' is generally insufficient." *AHBP LLC*, 649 F. Supp. 3d at 389 (quoting *Hidden Values, Inc. v. Wade*, No. 3:11-CV-1917-L, 2012 WL 1836087, at *4 (N.D. Tex. May 18, 2012)).  However, "[m]ultiple defendants' conduct may be 'lumped together' without violating Rule 9(b) 'if the plaintiff's allegations elsewhere designate the nature of the defendant[s'] relationship to a particular scheme and identify the defendants' role'

32

in the alleged fraud." *Id*. (quoting *Ogbonna*, 2014 WL 2592097, at *10).  Here, because the Amended Complaint lumps the Defendants together in an attempt to establish fraud, Sterett may satisfy Rule 9(b) only if the Amended Complaint elsewhere specifies each Defendant's role in the alleged fraud.  The Amended Complaint fails to do so.  Sterett does not differentiate between Refined Metals, J-3 Metals, PWH, and Proler much less specify how each is connected to the alleged fraud.  *See Drywall Elements, LLC v. Edward Wolff & Assocs., LLC*, No. 4:21-CV-00537-CAN, 2022 WL 4667997, at *5 (E.D. Tex. Sept. 30, 2022) (holding that plaintiff failed to meet the requirements of TBOC § 21.223 by merely pleading "conclusory accusations lacking factual support" and "lump[ing] all [d]efendants together, failing to make specific allegations in connection with each of its claims").  Accordingly, Sterett has failed to state a claim of actual fraud against Refined Metals, J-3 Metals, PWH, and Proler.

Moreover, the court concludes that Sterett has not sufficiently pleaded facts demonstrating that the fraud was primarily for the direct personal benefit of Refined Metals, J-3 Metals, PWH, and/or Proler.  While § 21.223 does not define "primarily for the direct personal benefit," "most cases finding the requirement to have been met had evidence showing that 'funds derived from the corporations' allegedly fraudulent conduct were pocketed by or diverted to the individual defendant.'"  *Bates Energy Oil & Gas*, 361 F. Supp. 3d at 673-74 (quoting *Hong v. Havey*, 551 S.W.3d 875, 885 (Tex. App.—Houston [14th Dist.] 2018, no pet.)).  "When the funds were used for the corporation's benefit, that has been held insufficient, even where it indirectly benefits the corporate officers and agents because the corporation is 'able to live another day due to its ability to satisfy some demands' or because their ownership interest retains its value, and this appears true even where the individual is the sole shareholder and where corporate formalities are

disregarded." *Id*. (citing *Morgan v. Fuller*, No. 07-15-00314, 2016 WL 2766106, at *2-3 (Tex. App.—Amarillo 2016, no pet.); *see Transpecos Banks v. Strobach*, 487 S.W.3d 722, 736-37 (Tex. App.—El Paso 2016, no pet.)).   Sterett contends that it has pleaded that the actual fraud was perpetrated primarily for the direct personal benefit of Defendants by alleging common ownership and shareholder interest.   Sterett further asserts that, because all Defendants are alleged to be under common ownership and control, PH Steel's failure to pay Sterett would benefit all Defendants.   Nonetheless, Sterett's pleading is insufficient to demonstrate a basis for finding that the fraud was primarily for the direct personal benefit of Refined Metals, J-3 Metals, PWH, and/or Proler.   Accordingly, the court dismisses Sterett's veil piercing claims that are based on the underlying breach of contract and fraud claims, subject to repleading.

> 2.      Conversion, Unjust Enrichment, Quantum Meruit, and Promissory Estoppel Claims

Sterett seeks to pierce the corporate veil on the basis that PH Steel is the alter ego of Refined Metals, J-3 Metals, PWH, and Proler and that PH Steel was used as a sham to perpetrate a fraud.

> a.      Alter Ego

Veil piercing under the alter ego theory is appropriate "(1) where a corporation is organized and operated as a mere tool or business conduit of another; and (2) there is such 'unity between corporation and individual that the separateness of the corporation has ceased' and holding only the corporation or individual liable would result in injustice."   *BMN Ent., LLC v. Je'Caryous Johnson Ent. LLC*, No. 4:22-CV-3143, 2023 WL 9319297, at *10 (S.D. Tex. Nov.

34

28, 2023) (quoting *Richard Nugent & CAO, Inc. v. Est. of Ellickson*, 543 S.W.3d 243, 266 (Tex.

App.—Houston [14th Dist.] 2018, no pet.)).

> Alter ego is shown from the total dealings of the corporation and the individual, including the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes.

*S.E.C. v. Res. Dev. Int'l, LLC*, 487 F.3d 295, 302 (5th Cir. 2007) (quoting *Castleberry*, 721

S.W.2d at 272).  Importantly, however, "[t]he corporate structure . . . is not disregarded 'merely

because of centralized control, mutual purposes, and shared finances.'"  *BMN Ent., LLC*, 2023

WL 9319297, at *10 (quoting *SSP Partners*, 275 S.W.3d at 455).

Here, Sterett contends that Defendants "are operated as a single entity" and "[i]nequity

would result if Defendants were allowed to use PH Steel as a shield from liability."  Specifically,

Sterett alleges that Defendants commingle their funds and pay for each other's liabilities.  For

instance, the Amended Complaint contends that PWH made multiple payments to Sterett for the

lease of the Equipment.  Sterett also notes that Defendants share common owners and managers.

As alleged, J-3 Metals and PH Steel are one hundred percent (100%) owned by Refined Metals.

Proler is one of three members of Refined Metals, as well as the sole member of PWH.  Sterett

also asserts that Proler, during the relevant time period, owned, controlled, and dominated the

operations of all of the Corporate Defendants.  In addition, Sterett alleges that Defendants "use

similar corporate names; the corporations share common principal corporate officers, directors,

and employees; the business purpose[s] of the corporations are similar; and the corporations are

located in the same offices and use the same telephone numbers and email addresses."

The court finds that Sterett has sufficiently pleaded its alter ego claim at this stage of the proceeding.  Sterett is not relying on any one factor in its alter ego claim; rather, Sterett has identified a number of factors, that when considered together, rise above a conclusory assertion and are legally sufficient.  Accordingly, the motions to dismiss are denied as they pertain to Sterett's alter ego theory for its claims of conversion, unjust enrichment, quantum meruit, and promissory estoppel.

b.   <u>Sham to Perpetrate Fraud</u>

The corporate veil can also be pierced if the corporate form was used as a sham to perpetrate fraud.  Under Texas law, to prove there has been a sham to perpetrate fraud, "[o]nly 'constructive fraud' is required, meaning 'the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests.'"  *Ledford*, 9 F.4th at 339 (quoting *Spring St. Partners-IV, L.P.*, 730 F.3d at 443); *Castleberry*, 721 S.W.2d at 273.  "'[N]either fraud nor an intent to defraud need be shown,' but only that 'recognizing the separate corporate existence would bring about an inequitable result.'"  *Ledford*, 9 F.4th at 339 (quoting *Spring St. Partners-IV, L.P.*, 730 F.3d at 443).  "Examples [of an inequitable result] are when the corporate structure has been abused to perpetrate a fraud, evade an existing obligation, achieve or perpetrate a monopoly, circumvent a statute, protect a crime, or justify wrong."  *SSP Partners*, 275 S.W.3d at 451; *see Gibraltar Sav. v. LDBrinkman Corp.*, 860 F.2d 1275, 1289 (5th Cir. 1988) (noting the following situations may support a sham to perpetrate fraud claim: "where the corporate fiction is resorted to as a means of evading an existing legal obligation" and "where the corporate fiction is relied upon as a protection of crime or to justify wrong").

36

"The variety of shams is infinite, but many fit this case's pattern:  A closely held corporation owes unwanted obligations, it siphons off corporate revenues, sells off much of the corporate assets, or does other acts to hinder the ongoing business and its ability to pay off its debts." *Gibraltar Sav.*, 860 F.2d at 1289; *accord Love v. State*, 972 S.W.2d 114, 120 (Tex. App.—Austin 1998, no pet.) (collecting cases); *cf. Ledford*, 9 F.4th at 340 (holding that undercapitalization alone is not sufficient to justify veil-piercing under either an alter ego or a sham to perpetrate fraud theory).

The court finds that the Amended Complaint does not provide sufficient support for its sham to perpetrate fraud theory.  The Amended Complaint states that Defendants "caused illegality, fraud, and/or injustice or attempted to enable one economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise." Sterett provides no other context for its sham claim and does not further describe how Defendants intended to escape liability.  In fact, rather than siphoning off corporate revenues to avoid corporate debt, Sterett contends the PWH made payments under the lease on behalf of PH Steel. Sterett fails to state a claim sufficiently under the sham to perpetrate fraud theory for its claims of conversion, unjust enrichment, quantum meruit, and promissory estoppel.  Accordingly, Sterett's veil piercing claim premised on sham to perpetrate fraud is dismissed, subject to repleading.

C.    Conspiracy

Finally, Sterett asserts a claim of civil conspiracy against Defendants.  "In Texas, a civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Bates Energy Oil & Gas, L.L.C. v. Complete*

*Oil Field Servs., L.L.C.*, No. 20-50952, 2021 WL 4840961, at *3 (5th Cir. Oct. 15, 2021) (quoting *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996)); *accord Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 709 (5th Cir. 2009) (quoting *Lane v. Halliburton*, 529 F.3d 548, 564 (5th Cir. 2008)); *Murray v. Earle*, 405 F.3d 278, 293 (5th Cir.), *cert. denied*, 546 U.S. 1033 (2005); *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 583 (Tex. 2001). Under Texas law, the elements of a civil conspiracy claim are: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Civelli v. J.P. Morgan Sec., L.L.C.*, 57 F.4th 484, 492 (5th Cir.) (quoting *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983)), *cert. denied*, 143 S. Ct. 2585 (2023); *accord WickFire, L.L.C. v. Woodruff*, 989 F.3d 343, 358 (5th Cir. 2021); *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017). The goal of a conspiracy allegation is to extend liability in tort beyond the active wrongdoer to those who may have merely planned, assisted, or encouraged the wrongdoer. *Agar Corp., Inc. v. Electro Cirs. Int'l, LLC*, 580 S.W.3d 136, 140 (Tex. 2019).

"[A] general allegation of conspiracy[,] without a statement of the facts constituting that conspiracy, is only an allegation of a legal conclusion and is insufficient to constitute a cause of action." *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 631-32 (5th Cir. 1999) (quoting *McCleneghan v. Union Stock Yards Co. of Omaha*, 298 F.2d 659, 663 (8th Cir. 1962)); *accord Am. Realty Tr., Inc. v. Hamilton Lane Advisors, Inc.*, 115 F. App'x 662, 666 n.16 (5th Cir. 2004). Although the pleading of detailed evidence is not required, "the complaint must contain sufficient information to show that a valid claim for relief has been stated and to enable the

opponent to prepare adequate responsive pleadings." *Guidry*, 188 F.3d at 632.  Civil conspiracy may be proven entirely by circumstantial evidence. *Bates Energy Oil & Gas, L.L.C.*, 2021 WL 4840961, at *3 (citing *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 858 (Tex. 1968)); *Paschal v. Great W. Drilling, Ltd.*, 215 S.W.3d 437, 453 (Tex. App.—Eastland 2006, pet. denied); *Greenberg Traurig of N.Y., P.C. v. Moody*, 161 S.W.3d 56, 89 (Tex. App.—Houston [14th Dist.] 2004, no pet.).  Such evidence, however, must amount to more than mere suspicion. *Alford v. Thornburg*, 113 S.W.3d 575, 588 (Tex. App.—Texarkana 2003, no pet.) (citing *Transport Ins. Co.*, 898 S.W.2d at 278).

"To establish a cause of action based on conspiracy[,] a plaintiff must show that the defendants agreed to commit an illegal act." *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982); *accord Civelli*, 57 F.4th at 492 ("To establish a meeting of the minds, 'there must be an agreement among [the alleged conspirators] and each must have a specific intent to commit the act.'" (quoting *San Antonio Credit Union v. O'Connor*, 115 S.W.3d 82, 91 (Tex. 2003))); *First United Pentecostal Church of Beaumont*, 514 S.W.3d at 222 ("An actionable civil conspiracy requires specific intent to agree to accomplish something unlawful or to accomplish something lawful by unlawful means.").  "Thus, an actionable civil conspiracy exists only as to those parties who are aware of the intended harm or proposed wrongful conduct at the outset of the combination or agreement." *First United Pentecostal Church of Beaumont*, 514 S.W.3d at 222.  The mere agreement to commit an illegal act, however, is insufficient.  "For liability to attach, there must be an unlawful, overt act in furtherance of the conspiracy." *Massey*, 652 S.W.2d at 934; *Westergren v. Jennings*, 441 S.W.3d 670, 683 (Tex. App.—Houston [14th] 2014, no pet.) ("[A] conspiracy may be established by proof of facts and circumstances from which the natural

inference arises that the unlawful, overt acts were committed in furtherance of the common design, intention, or purpose of the alleged conspirators.").

Under Texas law, civil conspiracy is a derivative tort and liability for a civil conspiracy depends on a defendant's participation in an underlying tort. *Civelli*, 57 F.4th at 493; *WickFire, L.L.C.*, 989 F.3d at 358; *Allstate Ins. Co. v. Receivable Fin. Co., L.L.C.*, 501 F.3d 398, 414 (5th Cir. 2007) (citing *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996)). "If a plaintiff fails to state a separate underlying claim on which the court may grant relief, then a claim for civil conspiracy necessarily fails." *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 640 (5th Cir. 2007); *accord Agar Corp., Inc.*, 580 S.W.3d at 141.

Here, under the heading of "Civil Conspiracy," the Amended Complain recites the elements of civil conspiracy, stating: "Defendants were members of a combination of two or more persons"; "[t]he object of Defendants' conspiracy was to accomplish an unlawful purpose or a lawful purpose by unlawful means"; "[t]he Defendants had a meeting of the minds to accomplish their unlawful purpose [o]r lawful purpose by unlawful means"; "[t]he Defendants committed an unlawful overt act in furtherance of the conspiracy"; and "[t]he Defendants' wrongful and unlawful acts caused injury to Sterett." The Amended Complaint does not specify the nature of the "unlawful purpose" or "unlawful means" or the overt act it claims was taken in furtherance of the conspiracy. While these legal conclusions may provide the framework of Sterett's cause of action, they must be supported by factual allegations. *See Iqbal*, 556 U.S. at 679.

Elsewhere in its Amended Complaint, Sterett states: "All Defendants conspired to fraudulently induce Sterett to enter into a bare rental lease agreement with PH Steel," and "Defendants conspired to perpetrate a fraud upon Sterett by inducing Sterett to lease the

Equipment to PH Steel pursuant to the terms of the Contract that they solicited without intending to pay Plaintiff." The court surmises that Sterett intends to allege that Defendants conspired to fraudulently induce Sterett to enter into the lease agreement. The court has already found Sterett's claim of fraudulent inducement lacking; therefore, Sterett's claim of civil conspiracy that is premised on fraudulent inducement must also fail. *See Agar Corp., Inc.*, 580 S.W.3d at 141 ("[A] civil conspiracy claim is connected to the underlying tort and survives or fails alongside it.").

To the extent that Sterett's pleading intends to establish a conspiracy based on some other unlawful purpose or unlawful means, it fails to state sufficient facts constituting the conspiracy to enable the opponent to prepare adequate responsive pleadings. As noted above, when considering a motion to dismiss under Rule 12(b)(6), the court does not strain to find inferences favorable to the plaintiff or accept conclusory allegations, unwarranted deductions, or legal conclusions. Accordingly, Sterett's claim of civil conspiracy is dismissed, subject to repleading.

## VI.    Motion to Designate

PH Steel's Unopposed Motion for Extension of Time to Designate Third Parties (#68), wherein PH Steel requests that the deadline to designate any potential responsible third parties be extended, is GRANTED.

## VII.    Conclusion

In accordance with the foregoing analysis, PH Steel's Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (#56), Refined Metals and J-3 Metals's Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (#53), and PWH and Proler's Rule 12(b)(6) Motion to Dismiss

Plaintiff's First Amended Complaint (#55) are granted in part and denied in part.  Specifically, Sterett's cause of action for fraudulent inducement against PH Steel is dismissed, subject to repleading.  To the extent Sterett alleges direct causes of action for breach of contract, fraud, fraudulent concealment, fraudulent inducement, unjust enrichment, quantum meruit, promissory estoppel, and conversion against Refined Metals, J-3 Metals, PWH, and Proler, these causes of action are dismissed, subject to repleading.  Further, Sterett's claims for piercing the corporate veil that are premised on its causes of action for breach of contract and fraud are dismissed, subject to repleading.  Moreover, Sterett's veil piercing claims that are based on a sham to perpetrate fraud theory are dismissed, subject to repleading.  Finally, Sterett's cause of action for civil conspiracy is dismissed, subject to repleading.

PH Steel's Unopposed Motion for Extension of Time to Designate Third Parties (#68) is GRANTED.

An amended scheduling order will be entered separately that will include deadlines for Sterett to file a Second Amended Complaint, as well as for Defendants to designate third parties.

SIGNED at Beaumont, Texas, this 19th day of March, 2024.

_Marcia A. Crone_
_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE